(No. 66294.—

*In re* MARRIAGE OF CHRISTINE VERDUNG, Appellee, and PHILIP W. VERDUNG (JoAnn Verdung, Appellant).

*Opinion filed February 2, 1989.—Rehearing denied April 3, 1989.*

544

CALVO, J., took no part.

Lehrer, Flaherty & Canavan, of Wheaton (Norman H. Lehrer, of counsel), for appellant.

Patrick I. Hartnett and Robert D. Shearer, of Chicago, for appellee.

JUSTICE RYAN delivered the opinion of the court:

The proceedings below may be summarized as follows. Christine Riis, Philip W. Verdung's first wife, filed a petition for a rule to show cause against her former husband, seeking payment of past due amounts due under the divorce decree. To satisfy the judgment entered, the circuit court of Kane County ordered the sale of a residential home owned as joint tenants by Philip Verdung and his second wife, JoAnn. JoAnn petitioned for one-half of the net proceeds of the sale, which the court awarded her. Christine appealed, claiming that previous court orders had terminated JoAnn's interest in the property, and that JoAnn did not appeal them within 30 days and therefore her assertion of one-half the net proceeds was an improper collateral attack on the earlier final orders. The appellate court, with one justice dissenting, agreed (162 Ill. App. 3d 374), holding that the orders terminated JoAnn's interest in the property, that at the time of their entry the court had jurisdiction over JoAnn and that the orders could not be collaterally attacked. We agree that the circuit court had jurisdiction over JoAnn though she had not been served with pro-

cess; however, we find that her petition that she be awarded one-half the net proceeds from the sale was properly allowed by the trial court.

On April 9, 1979, a judgment for dissolution of the marriage of Philip and Christine Verdung was entered. Pursuant to that judgment, Philip agreed to pay Christine $950 a month for the following 10 years. Philip married JoAnn on April 16, 1979. In July 1980, they purchased as joint tenants the residential property which became the subject of this suit. On August 22, 1983, the court entered a rule to show cause against Philip because he had fallen behind in his payments to his first wife. On January 27, 1984, Philip conveyed his right, title, and interest in the subject premises to JoAnn. In the subsequent months a number of hearings were held on rules to show cause, and on December 4, 1984, the court entered an order finding that Philip's conveyance of his interest in the home to JoAnn was a fraud against Christine and that the property should stand as security for the balance remaining due to Christine. The court ordered that in the event the property was sold, any remaining balance due under the divorce decree would be accelerated and paid out of the proceeds of the sale.

Christine filed on June 4, 1985, a motion against Philip and JoAnn for a rule to show cause and for sanctions for violation of the December 4, 1984, order. The court issued a rule to show cause on June 5 against Philip for failure to comply with the previous order. In a subsequent order the court provided that the property "owned by JoAnn Verdung shall be conveyed to Christine Verdung via Judges deed issued by this court." It further ordered Christine to list the home for sale and to obtain court approval before closing the sale and distributing the funds.

The property was sold in late 1985, and Christine filed a motion on January 9, 1986, to distribute the sales pro-

ceeds. The motion came on for hearing on February 6. The attorney for JoAnn asserted a one-half interest in the net proceeds of the sale and offered into evidence the deed conveying the premises to JoAnn and Philip as joint tenants. The judge took the issue under advisement and said he would review the pleadings and the transcripts of the prior hearings, most of which occurred before other judges. On March 24, JoAnn filed an unverified answer to Christine's motion claiming that despite the fraudulent conveyance she still had ownership to an undivided one-half of the property and was entitled to half of the sales proceeds. On that date a letter from the circuit judge, dated March 21, was filed wherein he found that the December 4, 1984, order was not clear as to whether JoAnn's interest was terminated. Therefore, he awarded one-half of the net proceeds to Christine and the other half to JoAnn. An order in compliance with this view was entered on May 1, 1986. Although the subject premises were sold for $170,000, well below what the parties had originally anticipated, the net proceeds, after payment of the mortgage and expenses of the sale, were approximately $40,000. Philip owed Christine approximately $56,000. A motion to reconsider the distribution order was denied on June 3, 1986, and Christine appealed.

On appeal, Christine argued that though JoAnn had not been served with process the court had jurisdiction over her due to her participation in the hearings. She also claimed that the court orders of December 4, 1984, and July 9, 1985, which granted a lien in the property and conveyed it to Christine for purposes of sale, terminated JoAnn's interest and, because these were final orders which were not appealed within 30 days, they were not subject to collateral attack. JoAnn claimed that she had never participated as a party and did not file an appearance until after those orders had been entered and they therefore could not terminate her interest. She also

claimed the order of distribution is the one which was being appealed and that was done within 30 days.

The appellate court held that there was *in personam* jurisdiction over JoAnn. It reasoned that JoAnn's conduct throughout the proceedings indicated she recognized the court's jurisdiction, that she never filed a pleading contesting *in personam* jurisdiction and instead filed pleadings seeking relief from the trial court. The appellate court then ruled that JoAnn should have asserted her interest in the property when the lien was attached or when the premises were conveyed by judge's deed. No appeal from those orders was filed and because they were final orders she could not subsequently collaterally attack them. We allowed JoAnn's petition for leave to appeal.

In order to have a valid judgment the court must have both jurisdiction over the subject matter of the litigation and jurisdiction over the parties. (*State Bank v. Thill* (1986), 113 Ill. 2d 294, 308.) Personal jurisdiction may be acquired either by the party's making a general appearance or by service of process as statutorily directed. (*State Bank*, 113 Ill. 2d at 308.) A judgment rendered by a court which fails to acquire jurisdiction over the parties is void and may be attacked and vacated at any time, either directly or collaterally. *State Bank*, 113 Ill. 2d at 308-09; *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 309.

There is no doubt that as of November 19, 1985, the date of the general appearance, the court had jurisdiction over JoAnn. However, a party who submits to the court's jurisdiction does so only prospectively and the appearance does not retroactively validate orders entered prior to that date. (*J.C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 647; *Sullivan v. Bach* (1981), 100 Ill. App. 3d 1135, 1142.) There are, nevertheless, instances prior to entry of a general appearance or service of pro-

cess where the court may have jurisdiction over a party because of either the person's participation in the case or recognition of benefits from the proceedings. *Lord v. Hubert* (1957), 12 Ill. 2d 83, 87; *People v. Estep* (1955), 6 Ill. 2d 127, 128; *Brown v. VanKeuren* (1930), 340 Ill. 118, 121-22; *Rock Island Bank & Trust Co. v. Stauduhar* (1978), 59 Ill. App. 3d 892, 902.

The court in *Lord v. Hubert* (1957), 12 Ill. 2d 83, held that participation in a lawsuit may be sufficient to invoke personal jurisdiction even though the person was not named as a party or served with process. In *Lord*, the owner of a 141-acre farm died and her will directed that two years after her death the property was to be sold and the proceeds to go to her three children, with one interest, Guy B. Lord's, to be held in trust during his life and on his death one-half to go to his descendants and the other one-half to his brother and sister. The plaintiff, Clair Max Lord, was a descendant of Guy B. Lord. Three years after the owner's death a suit was filed to sell the land. Clair Max Lord was not served with notice or named as a party. One year later Clair filed a suit to receive the income from the trust set up for the benefit of Guy B. Lord. This suit was successful. Two years later, after the death of Guy B. Lord, Clair filed a petition in the original partition suit to terminate the trust and pay the corpus to him. Before that suit came for hearing, he filed a new suit requesting another partition of the property. He claimed to be a contingent remainderman at the time of the first partition suit and that since his interest arose after the suit, and because he was not a party thereto, his interest could not have been extinguished. The court stated that although "participation may come in many forms, suffice to say that any action taken by the litigant which recognizes the case as in court will amount to a general appearance unless such action was for the sole purpose of objecting to the jurisdiction." (12 Ill. 2d at

87.) It then dismissed the suit, holding that Clair's actions acknowledged the existence of the first partition suit and by filing an action in the original suit he waived any jurisdictional defects and was therefore bound by the prior orders.

Similarly, the defendant in *O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, the former chief executive officer of a dissolved corporation, was never named as a party or served with process. The court held personal jurisdiction was satisfied because he "had notice of the proceedings, failed to limit his appearance in the trial court, actively participated and directed the litigation and requested affirmative relief from the court when it became apparent that plaintiffs sought to discover assets of the judgment debtor which he held." 143 Ill. App. 3d at 1069. See also *Brown v. VanKeuren* (1930), 340 Ill. 118, 121-22 (defendant was not served but was a witness and participated in litigation of the case); *Rock Island Bank & Trust Co. v. Stauduhar* (1978), 59 Ill. App. 3d 892, 902 (court did not have jurisdiction over party but she subsequently accepted benefits from an earlier judgment and thereby waived objection to jurisdiction).

We find that prior to the November 1985 general appearance, JoAnn's participation in the proceedings was sufficient to invoke *in personam* jurisdiction over her. Though Christine filed her actions under the original divorce proceedings, and JoAnn was not served with process, JoAnn took part in the litigation from the earliest stages and was aware of the orders affecting her property interest.

In April 1984, JoAnn testified in the rule to show cause hearing in regard to certain of her and Philip's financial dealings. Before JoAnn took the stand, Christine's attorney inquired into why she was going to testify. Philip's attorney responded that the matter was

very important to her and she was concerned with what happens with her husband. The hearing was continued until July 27, at which time Christine complained of the difficulty in serving Philip and her desire to insure that JoAnn would be present at future hearings. On the court's motion, JoAnn was added as a party defendant for the purpose of having her appear and testify, and she was directed to attend subsequent hearings. The court stated that if it should be discovered that an improper transfer of the property was made the order could be expanded.

The rule to show cause hearing was continued until October 4, and JoAnn resumed the stand to testify. Before she began, the court held a conference in chambers, after which it was agreed that there had been a fraudulent conveyance of Philip's interest in the home to JoAnn and the court ordered that the house owned by JoAnn would stand as security for the balance due in maintenance. The record is unclear as to whether JoAnn participated in the conference.

Philip again fell behind in payments and another rule to show cause was filed, this time against him and JoAnn. The notice of motion was served upon Philip's attorney, Philip and JoAnn. The court issued a rule to show cause on June 5, against Philip for failure to comply with the previous support orders, and the rule was continued. On July 9, the court entered another order which clearly affected JoAnn's property. The order provided:

"1) That the [property] owned by JoAnn Verdung shall be conveyed to Christine Verdung via Judges deed issued by this court by Judge Michael F. O'Brien.

2) That Christine Verdung shall immediately list said parcel for sale at fair market of at least $250,000.

3) That prior to closing, any sale and distribution of funds shall be presented to this court for approval.

\*\*\*

5) That at closing, all arrearages paid immediately and directly to Christine Riis + the balance owed her shall be placed in escrow at Gary Wheaton Bank, said balance to be paid her in monthly installments equivalent to payments ordered by this court in Judgment for Dissolution of Marriage of 4-9-79.''

The case came up again on August 16, 1985, and Philip's attorney, R. Lee Huszagh, appeared and a discussion regarding the judge's deed was held. Huszagh argued that the property should be partitioned instead of conveyed to Christine for sale because the deed made no provision for the sizeable interest JoAnn had in the property. The court declined to change the prior orders or deed and said that at the time for distribution the parties could argue where the money from the sale should go.

Further evidence of JoAnn's involvement in the litigation is clear from the petition Huszagh filed in late 1985 requesting to withdraw as Philip's attorney. Attached to the petition was a request for fees which detailed Huszagh's services. Included were numerous phone calls and conferences regarding the court proceedings and the property held with JoAnn and Philip between September 1983 and October 1985.

On November 12, 1985, Christine's attorney served notice on Philip, JoAnn and Jack T. Perry, an attorney who apparently began representing JoAnn, that she would be seeking a reduction in the sale price. At the November 19 hearing, Perry filed a general appearance for JoAnn. He informed the court that he would be asserting a one-half interest in the proceeds of the sale for JoAnn. At the hearing Perry questioned witnesses and introduced evidence.

At no time was any pleading filed in the trial court contesting jurisdiction over JoAnn or questioning the propriety of the earlier orders. Nor does she now assert that the court lacked authority to place the lien on the

property or to sell it. JoAnn only asserts that as a joint tenant she is entitled to part of the sale proceeds. She claims that any order which may have terminated her interest was void because the court lacked jurisdiction over her. We believe that, pursuant to *Lord*, the court had jurisdiction to enter the orders that it did because of her participation. (See also *People v. Estep* (1955), 6 Ill. 2d 127, 128 (defendants were never served but jurisdiction found because their attorney asked for six continuances); *Kelly v. Brown* (1923), 310 Ill. 319, 323-25 (defendant improperly served but filed a motion for change of venue and an answer, and participated in the trial); *Bradshaw v. Pellican* (1987), 152 Ill. App. 3d 253, 256 (defendant filed a special appearance, yet his actions recognized the court's jurisdiction).) JoAnn was served with pleadings, the court named her as a party defendant to testify, and she was present at the hearings. She asserted her interest in the litigation and had numerous conversations and meetings with the attorney who litigated the case. JoAnn was clearly aware of all the orders that affected her property. She cannot at trial assert an interest in the proceeds of the sale and on appeal claim that the court had no jurisdiction to enter the orders. *Supreme Hive Ladies of the Maccabees of the World v. Harrington* (1907), 227 Ill. 511, 525 (when a defendant questions jurisdiction the court should determine whether he took any steps or raised any defenses which required the court to exercise jurisdiction).

The next issue is whether the prior orders terminated JoAnn's interest in the premises so that she is now barred from collaterally attacking them or whether she was timely in asserting her one-half interest at the time of the distribution. The appellate court held that the orders which attached the lien to the property and which directed that the property be conveyed to Christine by judge's deed were final orders which terminated JoAnn's

interest in the premises. It held that however erroneous the orders may have been, her remedy was to appeal from them within 30 days or to file a section 2—1401 petition (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401). Her failure to do so waived her right to appeal and she was barred from collaterally attacking the orders.

Jurisdiction of appellate courts is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171; *Village of Niles v. Szczesny* (1958), 13 Ill. 2d 45, 47.) A judgment is final for appeal purposes if it determines the litigation on the merits or some definite part thereof so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 171; *South Chicago Community Hospital v. Industrial Comm'n* (1969), 44 Ill. 2d 119, 121.

Certainly the orders which created the lien and directed the sale affected JoAnn's interest. However, as the circuit court held after reviewing the orders and transcripts, it is not clear that they were meant to terminate JoAnn's interest in the proceeds. Review of the record also discloses that the parties apparently were not sure of the effect of these orders. At the August 16, 1985, hearing Philip's attorney objected to the form of the judge's deed Christine provided. The following took place:

> "The Court: Take this [the deed] to Judge Wilson and you can get that signed.
>
> Mr. Huszagh: I would make one suggestion, though. I think that rather than conveying the property, I made out a list—
>
> The Court: Oh, no, no, no, Mr. Huszagh, no, no, no. Nothing—There's nothing before me. I'm not going to do

any changes. Take it up to Judge Wilson and have him sign it. I am not going to rehash this business again.

Mr. Huszagh: No, I was just talking about your order, Your Honor, and what his proposed deed is.

Mr. Harnett: What about this?

The Court: What's wrong with the deed?

Mr. Huszagh: Okay. *The deed makes no provision for the interest of JoAnn Verdung. JoAnn Verdung has a sizeable interest in this.*

The Court: Didn't we cover all that in the order?

Mr. Harnett: Yes.

Mr. Huszagh: No we didn't

Mr. Hartnett: Sure, it's listed in the order, Judge.

Mr. Huszagh: I don't think it covers her interest. It merely said to appear before the court.

The Court: I thought we provided that before any proceeds were distributed—

Mr. Huszagh: The Court may make approval.

The Court: —the accounting be approved by the Court.

Mr. Huszagh: Did it say accounting, Judge? I know it said the distribution of proceeds—

The Court: We spent a lot of time on this, I know we did.

Mr. Hartnett: I remember—

Mr. Huszagh: Here it is. 'Three. That prior to closing, any sale and distribution of funds shall be presented to this court for approval.' That's all it says.

The Court: So, that takes care of that. The property's worth is probably—

Mr. Huszagh: Possibly two fifty.

The Court: *Your client gets about fifty or thereabouts, and at the time it closes Mr. Hartnett is going to come in here with a petition asking me to approve any distribution of funds. At that time you can come in here and make sure it goes where it's supposed to go.*

Mr. Hartnett: *We will prove up the arrearage at that time, and that's it, I assume.*

The Court: Right.

\* \* \*

Mr. Huszagh: Okay. So, you won't hear my proposition that the partition is the more appropriate remedy than the sale?

The Court: Absolutely not." (Emphasis added.)

From this discussion it is reasonable to conclude that the parties believed the property was worth over $250,000, and at distribution the arrearage would be paid and the joint tenant could assert her claim to the proceeds. They never contemplated that even after the sale there would be a shortage, and only when that occurred did the issue arise as to whether JoAnn had lost her interest.

Though she did not appeal from the orders attaching the lien and requiring the sale, the appeal was timely in regard to distribution. The previous orders were not meant to completely terminate her interest. The first order determined which property would be used as security for the maintenance. The second order directed that the property be sold and directed who would sell the property, at what price it would be sold, where the money would be deposited and how Christine had to proceed to receive her maintenance. We agree with the circuit court that the orders were not a final determination that JoAnn lost her right and interest as a joint tenant to the revenue from the sale. Nor was the intent clear that JoAnn could not later assert her interest.

Finding no termination of the interest, to allow JoAnn to assert her right at the distribution is consonant with the procedure used in a mortgage foreclosure or a partition suit. A judgment ordering the foreclosure of a mortgage is not final and appealable until the court enters orders approving the sale and directing the distribution. Unless the court makes a finding pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), that there is no just reason for delaying enforcement or appeal, the judgment of foreclosure is not appealable.

(*King City Federal Savings & Loan Association v. Ison* (1980), 80 Ill. App. 3d 900, 902; *Harlem Savings Association v. Lesniak* (1968), 91 Ill. App. 2d 194, 195; *Calumet Federal Savings & Loan Association v. Markman* (1964), 50 Ill. App. 2d 430, 438.) Likewise, a judgment of partition is not appealable in the absence of a Supreme Court Rule 304(a) finding by the trial court because it determines fewer than all the rights and issues. (*Getzelman v. Koehler* (1958), 14 Ill. 2d 396, 400.) There are a number of other issues which must be determined, including whether to divide or sell the property, approval of that decision by the court and perhaps of the sale price, and distribution of the proceeds by the court. See *Getzelman*, 14 Ill. 2d at 400; *Dixon v. Moller* (1975), 33 Ill. App. 3d 648, 649; *Varney v. Yangas* (1974), 24 Ill. App. 3d 364, 370; *Coats v. Coats* (1968), 92 Ill. App. 2d 75, 80; *Simon v. Simon* (1962), 37 Ill. App. 2d 100, 103.

The December 1984 and July 1985 orders did not terminate JoAnn's interest in the proceeds of the sale and neither contained a Rule 304(a) finding. Subsequent to the order directing sale, the court required approval of the sale price and of the distribution of assets, and only then was there a final and appealable order. Therefore, the appeal by Christine was timely filed following a judicial determination of the distribution of the assets, and the correctness of the trial court's distribution order is properly before this court. We affirm the finding of the circuit court that one-half of the net proceeds, after payment of the mortgage and expenses, is awarded to JoAnn Verdung and the other one-half to Christine Riis.

> *Appellate court affirmed in part and reversed in part; circuit court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.