NOTICE
Decision filed 11/23/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 190076-U

NO. 5-19-0076

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| FEDERAL HOME LOAN MORTGAGE CORPORATION, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| LASHAWNDRA V. HARRIS, WILLIE E. TIDWELL, U.S. BANK NATIONAL ASSOCIATION, EAST SIDE HEART & HOME FAMILY CENTER, JUSTINE PETERSON HOUSING AND REINVESTMENT CORPORATION, and Unknown Owners and Nonrecord Claimants, | ) ) ) ) ) ) ) ) ) | No. 17-CH-383 |
| Defendants | ) ) | Honorable Julie K. Katz, |
| (Lashawndra V. Harris, Defendant-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE WELCH delivered the judgment of the court.
Justice Barberis concurred in the judgment.
Justice Cates specially concurred.

**ORDER**

¶ 1   *Held*:   The trial court's amended judgment of foreclosure and sale and subsequent order confirming sale are vacated where the appellee failed to strictly comply with the prerequisites for service by publication, and thus, service upon the appellant was invalid. Because the appellant was never properly served, the court lacked personal jurisdiction over her, and the judgments entered against her were void.

1

¶ 2　　This case concerns a mortgage foreclosure action brought by the plaintiff-appellee, Federal Home Loan Mortgage Corporation, in the circuit court of St. Clair County. The defendant-appellant, Lashawndra V. Harris, appeals, asserting that the court erred in allowing the appellee to initiate a foreclosure action without serving a summons upon her; in allowing the appellee to serve summons by publication; and in entering a default judgment of foreclosure, an order shortening the redemption period, and its amended judgment without a certificate of service. For the following reasons, we vacate the judgments entered against the appellant.

¶ 3　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　In April 2004, the appellant executed a promissory note and mortgage in favor of U.S. Bank N.A. (U.S. Bank). The mortgage encumbered the residential real property commonly known as 619 North 7th Street, East Saint Louis, Illinois 62201 (subject property). The mortgage was duly recorded in the St. Clair County Recorder of Deeds office on May 4, 2004. The mortgage and promissory note together required the appellant to make monthly payments of principal, interest, and escrow amounts for property taxes and hazard insurance. The appellant later allegedly defaulted on her monthly repayment obligations under the note and mortgage.

¶ 5　　On June 5, 2017, the appellee filed the instant mortgage foreclosure action in St. Clair County against the appellant and certain other defendants. Attached to the complaint were exhibits including copies of the mortgage and the promissory note. That same day, a summons to the appellant was signed by the circuit court clerk.

2

¶ 6    On June 26, 2017, an affidavit to allow service by publication pursuant to section 2-206 of the Code of Civil Procedure (Code) (735 ILCS 5/2-206 (West 2016)) was filed by an investigator with ProVest Services, LLC (ProVest), a private detective agency who acted as the special process server in this case.  Attached as Exhibit A were separate affidavits of due diligence, which alleged that the investigator conducted a public records search for the appellant and her husband, Willie E. Tidwell.  The affidavits listed both the appellant's and Tidwell's social security numbers (SSN) as xxx-xx-3599.  Also attached as Exhibit B were affidavits alleging that the special process server attempted to personally serve the appellant on two occasions: once at 10:40 a.m. on Friday, June 9, 2017, at the subject property, and once at 9:25 a.m. on Wednesday, June 14, 2017, at an address that was not the subject property.  The affidavits alleged that both attempts were unsuccessful because the properties were vacant as indicated by the fact that the utilities were off and the yards were overgrown.  A second section 2-206 affidavit was filed by the appellee's counsel on June 26, 2017, which alleged that upon diligent inquiry, the appellant could not be found nor served with process.

¶ 7    On June 28, 2017, an affidavit of abandonment completed by a ProVest employee was filed in the trial court.  The affidavit alleged that the employee visited the subject property on June 9, 2017, at 10:40 a.m., and that during his inspection, he "found the property to be vacant and unoccupied."  In support of this conclusion, the employee indicated that the property was not open, the electric meter was not running, and the yard had not been mowed.  However, the employee also noted that the property was secured, there was no utility disconnection notice on the premises, the mail had been collected, there

3

was no "For Sale" sign on the property, and there were no legal notices on the premises. As "other" evidence that the property was vacant, the employee again stated that the utilities were off and the yard was overgrown.

¶ 8 On July 28, 2017, a certificate of publication was filed in the trial court, indicating that the Legal Reporter, a newspaper published weekly in Belleville, Illinois, published notice of the foreclosure action. The certificate of publication also stated that notice was published in said newspaper three times between July 12 and July 26, 2017.

¶ 9 On October 16, 2018, the appellee filed a supplemental affidavit as to military service, which stated:

> "[the appellee's] law firm has caused an online search to be conducted with the United States Department of Defense Manpower Data Center regarding current military status. The attached results of that search indicate that, the Defense Manpower Data Center does not possess any information indicating [the appellant or Tidwell are] currently on active duty in the United States Military."

Attached to the affidavit were said search results for the appellant and Tidwell. Importantly for our purposes, the appellant's social security number was listed as xxx-xx-3319, and Tidwell's was listed as xxx-xx-3599.

¶ 10 Also on October 16, 2018, the appellee filed a motion for entry of an order of default, a motion for entry of a judgment for foreclosure and sale, and a petition to shorten the redemption period. In support of its motions, the appellee attached the affidavit of Carla R. Wedding, an employee of U.S. Bank who calculated the total amounts due under the note and mortgage. The appellee noticed its motions for presentation to the trial court on November 1, 2018. The notice of motion was sent via U.S. Mail to the appellant at the subject property on October 16, 2018.

4

¶ 11    On November 1, 2018, the trial court granted the appellee's motion to shorten the redemption period, entered an order of default against the appellant, and entered a judgment for foreclosure and sale.  An amended judgment for foreclosure and sale was entered by the court on November 5, 2018.  The amended judgment indicated that it was "a final and appealable order with no just cause for further delay."

¶ 12    A judicial foreclosure sale was scheduled to take place on December 27, 2018, and notice of the sale was sent to the appellant at the subject property.  Notice of the sale was also published in the Scott Air Force Base Flier, a newspaper published in Belleville and at Scott Air Force Base.  The certificate of publication stated that notice was published in said newspaper three times between November 29 and December 13, 2018.  On December 28, 2018, the appellant filed a *pro se* application for waiver of court fees, which was granted on January 2, 2019.  On that same day, the appellant entered her appearance and filed a *pro se* postjudgment motion entitled, "answer to vacate the judgment."  The appellant asserted, *inter alia*, that she was not made aware of the foreclosure proceedings against her, that she was never notified of a court date, and that the subject property had not been abandoned.  The appellant's motion was set for presentation on January 24, 2019.[1]

¶ 13    In the interim, the appellee moved to confirm the judicial foreclosure sale.  On January 24, 2019, the trial court denied the appellant's postjudgment motion because it was filed more than 30 days after the judgment of foreclosure and sale was entered.  Also, on that date, the court confirmed the foreclosure sale but denied the appellee's request for

---

[1]None of the proceedings before the trial court were transcribed, and thus, no report of proceedings has been filed with this court.

5

immediate possession of the subject property. The order confirming the judicial sale included language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), indicating that it was "a final and appealable order with no just cause for further delay."

¶ 14    That same day, the appellant filed a *pro se* document entitled "Appeal," wherein she stated that she was "asking the court to vacate the foreclosure because [she] was not personally served." The trial court docketed this motion as a motion to reconsider. The appellant did not notice the motion for presentation to the court, so the appellee noticed it for presentment on February 28, 2019. However, prior to that date, the appellant filed a series of documents that the court construed as a notice of appeal. Consequently, the court did not rule on the appellant's postjudgment motion to reconsider.[2]

¶ 15    On February 12, 2019, the appellant filed a *pro se* notice of appeal. On February 19, 2019, this court ordered the appellant to show cause why her notice of appeal should not be stricken for failure to comply with Illinois Supreme Court Rule 303(b) (eff. July 1, 2017). On April 23, 2019, the appellee filed a motion to dismiss the appeal for the same reasons noted in our prior order. We now order the jurisdictional issue taken with the case.

---

[2]Pursuant to Illinois Supreme Court Rule 303(a)(2), a notice of appeal filed prior to disposition of the last pending postjudgment motion is premature unless the trial court has made an express written Rule 304(a) finding. See *In re Marriage of Valkiunas*, 389 Ill. App. 3d 965, 967-68 (2008). Thus, although the court did not rule on the appellant's motion to reconsider, the order confirming the judicial sale contained the necessary language pursuant to Rule 304(a), indicating that it was "a final and appealable order with no just cause for further delay." As such, we find that the appellant's notice of appeal was not premature.

¶ 16                                  II. ANALYSIS

¶ 17                          A. Appellate Jurisdiction

¶ 18    Before addressing the merits of this appeal, we must first determine whether the appellant has properly invoked the appellate jurisdiction of this court. The appellee argues that the appellant's appeal should be dismissed because her notice of appeal failed to identify the judgment appealed from or the relief sought as required by Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017).

¶ 19    "The filing of a notice of appeal 'is the jurisdictional step which initiates appellate review.' " *People v. Smith*, 228 Ill. 2d 95, 104 (2008) (quoting *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.*, 182 Ill. 2d 6, 7 (1998)). The notice of appeal must "specify the judgment *** appealed from and the relief sought from the reviewing court." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). "[A] notice of appeal confers jurisdiction on a court of review to consider only the judgments or parts thereof specified in the notice of appeal." *Smith*, 228 Ill. 2d at 104. A reviewing court must construe the notice of appeal liberally and as a whole. *Id*. at 104-05. In the absence of a properly filed notice of appeal, we are without jurisdiction and should dismiss the appeal. *Id*. at 104. However, if the deficiency in the notice of appeal is one of form, rather than substance, and the appellee is not prejudiced, then the failure to strictly comply with the notice requirements will not defeat our jurisdiction. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 176 (2011).

¶ 20    " 'In addition to the exception for form defects, there is also an exception for rulings that were necessary steps to the judgment named in the notice [of appeal].' " *JPMorgan Chase Bank, National Ass'n v. Ivanov*, 2014 IL App (1st) 133553, ¶ 40 (quoting *Filliung*

7

*v. Adams*, 387 Ill. App. 3d 40, 49 (2008), citing *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 436 (1979)).  Our supreme court has held that a judgment not specified in the notice of appeal is reviewable if the judgment appealed from " 'directly relates back to [it].' "  *Id.* (quoting *Filliung*, 387 Ill. App. 3d at 49, citing *Burtell*, 76 Ill. 2d at 434).

¶ 21    In this case, the appellant's *pro se* notice of appeal was filed on February 12, 2019. In the notice, the appellant stated that she was "filing an appeal," "requesting a stay of the final order to allow [her] to file the appeal," and seeking "to get a judgment of appeal."

¶ 22    While the appellant's notice of appeal failed to identify the judgment appealed from by name or date, she specifically mentioned the "final order."  Read liberally, we find that the "final order" could be construed as identifying the January 24, 2019, judgment confirming the foreclosure sale.  This order specifically indicated that, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), it was "a final and appealable order with no just cause for further delay."  Accordingly, we find that the alleged deficiency in the appellant's notice of appeal was one of form and not of substance, and the appellee was not prejudiced.  Thus, the appellant's failure to strictly comply with the notice requirements does not defeat our jurisdiction.  See *Pappas*, 242 Ill. 2d at 176.

¶ 23    Additionally, we find that the notice of appeal is sufficient to confer jurisdiction on this court to review the trial court's denial of the appellant's motion to vacate the judgment of foreclosure, which raised issues relating to service of process.  The denial of the appellant's motion was a necessary step before the court could enter its judgment confirming the foreclosure sale.  See *Ivanov*, 2014 IL App (1st) 133553, ¶ 41 (finding that

the court's denial of defendant's motion to quash service was a necessary step for its judgment confirming foreclosure sale).

¶ 24 With respect to the relief sought, "the failure to include a prayer for relief in a notice of appeal is an error of form not substance and, absent prejudice to the appellee, does not deprive the appellate court of jurisdiction." *Maywood-Proviso State Bank v. Village of Lisle*, 234 Ill. App. 3d 206, 215 (1992). The appellee has not alleged, much less shown, that it was prejudiced by the appellant's failure to specify her requested relief in the notice of appeal.

¶ 25 Lastly, the appellee maintains that the notice of appeal is insufficient to confer jurisdiction on this court as to the November 5, 2018, amended judgment of foreclosure and sale because it was not filed within 30 days after it was entered. However, our supreme court has stated that "it is the order confirming the sale, rather than the judgment of foreclosure, that operates as the final and appealable order in a foreclosure case." *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. Thus, the appellee's contention is without merit. See, *e.g.*, *Ivanov*, 2014 IL App (1st) 133553 (reviewing an appellant's claim relating to invalid service by publication after the trial court had entered an order confirming sale); *Citimortgage, Inc. v. Cotton*, 2012 IL App (1st) 102438 (same). Having found that the appellant has properly invoked our jurisdiction, we will now turn to the merits of her appeal.

¶ 26 B. The Trial Court's Personal Jurisdiction Over the Appellant

¶ 27 As previously stated, the appellant raises three arguments on appeal, namely that the trial court erred in allowing the appellee to initiate a foreclosure action without serving

a summons upon her; in allowing the appellee to serve summons by publication; and in entering a default judgment of foreclosure, an order shortening the redemption period, and its amended judgment without a certificate of service. In sum, however, the appellant's contentions can be construed as a challenge to the court's personal jurisdiction over her in the foreclosure action concerning her property. Specifically, the appellant raises the issue of whether the judgments entered against her were void because she was never served with process and the service by publication was invalid.

¶ 28 To enter a valid judgment, the trial court must have jurisdiction over the subject matter and the parties. *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 17; *In re Marriage of Verdung*, 126 Ill. 2d 542, 547 (1989). A judgment entered by a court lacking jurisdiction over the parties is void and may be challenged, directly or collaterally, and vacated at any time. *Id*.

¶ 29 Personal jurisdiction may be established either by service of process in compliance with the statutory requirements or by a party's voluntary submission to the trial court's jurisdiction. *BAC Home Loans Servicing*, 2014 IL 116311, ¶ 18. If a general appearance has not been entered, personal jurisdiction can be acquired only by service of process in a manner directed by statute. *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 308 (1986). The objectives of service of process are to protect an individual's right to due process by allowing for proper notification of interested individuals and an opportunity to be heard, and to vest jurisdiction in the trial court. *City of Chicago v. Yellen*, 325 Ill. App. 3d 311, 316 (2001). When a defendant has not been served with process as required by law, the court has no jurisdiction over that defendant and a default judgment entered against her is

10

void. *Id*. at 315. Whether the court obtained personal jurisdiction over a party is a question of law that we review *de novo*. *BAC Home Loans Servicing*, 2014 IL 116311, ¶ 17.

¶ 30 Section 2-206 of the Code (735 ILCS 5/2-206 (West 2016)) allows a plaintiff to serve process on a defendant by publication but limits such service to cases in which the plaintiff has strictly complied with the statutory requirements. *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, ¶ 18. Section 2-206 provides in part:

> "Whenever, in any action affecting property or status within the jurisdiction of the court, *** plaintiff or his or her attorney shall file *** an affidavit showing that the defendant resides or has gone out of this State, or on due inquiry cannot be found, or is concealed within this State, so that process cannot be served upon him or her, and stating the place of residence of the defendant, if known, or that upon diligent inquiry his or her place of residence cannot be ascertained, the clerk shall cause publication to be made in some newspaper published in the county in which the action is pending." 735 ILCS 5/2-206(a) (West 2016).

¶ 31 "Although the Code contemplates service by publication, our court long ago recognized that such service is an extraordinary means of serving notice—one unknown at the common law and that, from the perspective of the person to be notified, it is the least satisfactory method of giving notice and often it is no notice at all." (Internal quotation marks omitted.) *Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 13. Illinois courts have held that "these statutory prerequisites are not intended as *pro forma* or useless phrases," and have cautioned plaintiffs that when their efforts to comply with these provisions are "casual, routine, or spiritless," service by publication will be deemed invalid. *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006); see *West Suburban Bank v. Advantage Financial Partners, LLC*, 2014 IL App (2d) 131146, ¶ 20 ("defects in the service of process are neither 'technical' nor insubstantial"). Failure

11

to effect service as required by law deprives a court of personal jurisdiction, and any default judgment or foreclosure judgment based on defective service is void. *Karbowski*, 2014 IL App (1st) 130112, ¶ 12.

¶ 32   A plaintiff seeking to serve by publication must show that it conducted both a "diligent inquiry" in ascertaining the defendant's place of residence and a "due inquiry" in ascertaining her whereabouts. *Cotton*, 2012 IL App (1st) 102438, ¶ 18. In *Cotton*, the court recognized that a plaintiff may show it diligently inquired—through, for example, search databases, public records, or contacting neighbors and known counsel—to ascertain the last known address of a given defendant but nonetheless fail to "duly inquire" into the actual whereabouts of a defendant based on those search and service efforts. *Id*. ¶¶ 27-28.

¶ 33   In this case, the record reveals that within 10 days of instituting the foreclosure proceedings against the appellant, the appellee made a mere two attempts to personally serve the appellant prior to submitting its affidavit for service by publication. Only one attempt at service was made at each of the addresses located for her. Both attempts were made on weekdays during normal work hours. The affidavits completed as to each location contained a blanket statement that the premises were vacant and cited the same reasons for reaching that conclusion. Namely, the affiant stated that the utilities were off and the yards were overgrown. The investigator's affidavit of abandonment relied on these same reasons for reaching his conclusion that the subject property was "vacant and unoccupied," although he indicated in the same affidavit that the property was secured, there was no utility disconnection notice on the premises, the mail had been collected, there was no "For Sale" sign on the property, and there were no legal notices on the premises.

12

¶ 34   Thereafter, the appellee filed its section 2-206 affidavit for service by publication less than one month after initiating the foreclosure proceedings against the appellant.  The appellee's search into the actual whereabouts of the appellant and its attempts to serve her fall far short of being sufficient to constitute a due inquiry.  Rather, its hasty and minimal efforts to serve the appellant were "casual, routine, and spiritless," and thus, did not strictly comply with the statutory prerequisites for service by publication.  See, *e.g.*, *Ivanov*, 2014 IL App (1st) 133553, ¶ 50 (finding the trial court lacked jurisdiction over defendant because plaintiff's three prepublication attempts at service, conducted over four days at the same time of day and during a holiday weekend, were "casual, routine, [and] spiritless" (internal quotation marks omitted)).

¶ 35   We also find that the record raises a question as to whether the appellee conducted a diligent inquiry into the appellant's place of residence.  Although the ProVest investigator alleged that she conducted a public records search for the appellant, she utilized the wrong social security number when completing said search.  Exhibit A to the appellee's section 2-206 affidavit included two separate affidavits of due diligence, reflecting that a public records search was conducted as to the appellant and her husband, Tidwell.  However, both affidavits state the following:

A.  **INQUIRY OF CREDIT HEADER INFORMATION:**

1. **Social Security Number**:  My inquiry shows that the Subject/Defendant's SSN is xxx-xx-3599 and that this SSN is associated with the following address(es)

619 N 7TH STREET EAST SAINT LOUIS IL 62201
1533 N 46TH ST EAST SAINT LOUIS IL 62204

13

Obviously, the appellant and Tidwell cannot have the same social security number. As indicated by the appellee's affidavits as to military service, Tidwell's social security number was the one ending in 3599, while the appellant's social security number ends in 3319. Accordingly, the appellee has failed to prove that it searched for the appellant's place of residence using her social security number. Under these circumstances, we find that the appellee failed to complete a diligent inquiry into the appellant's place of residence, such as is required by section 2-206.

¶ 36 We note that the appellee's brief on appeal does not specifically dispute the appellant's allegations that prerequisites for service by publication were not satisfied. Instead, the appellee raises several procedural shortcomings in the appellant's filings before the trial court and before this court. However, we find that two aspects of the Illinois voidness doctrine allow us to look past such procedural issues to review whether the judgments entered against the appellant were void for lack of personal jurisdiction. First, courts have a special responsibility to vacate void judgments: indeed, they have an independent duty to do so, even *sua sponte*. *People v. Thompson*, 209 Ill. 2d 19, 27 (2004) *abrogated on other grounds*, *People v. Vara*, 2018 IL 121823. That duty weighs heavily in favor of allowing a plausible voidness claim to be considered on the merits. Second, Illinois's voidness doctrine makes it exceptionally difficult for a voidness claim to be lost to a procedural default. See *People v. Hubbard*, 2012 IL App (2d) 101158, ¶ 26 ("Illinois voidness doctrine will not allow the forfeiture of a voidness claim."); see also *Thompson*, 209 Ill. 2d at 27 (a voidness claim may be raised at any time).

14

¶ 37 In light of the foregoing, we find that this case presents a situation in which the interests of justice require us to consider the issue even though the appellant did not bring it through the appropriate motion. "Parties are not to be prejudiced of their rights or deprived of their property, without notice." *Boyland v. Boyland*, 18 Ill. 551, 553 (1857). As previously stated, service by publication is the least desirable method of service, and "often it is no notice at all." (Internal quotation marks omitted.) *Karbowski*, 2014 IL App (1st) 130112, ¶ 13. That is precisely what happened to the appellant in this case, where her property was foreclosed without her having notice that foreclosure proceedings had even been brought against her.

¶ 38 "A party defending notice by publication must show a strict compliance with every requirement of the statute." (Internal quotation marks omitted.) *Concord Air, Inc. v. Malarz*, 2015 IL App (2d) 140639, ¶ 34; see also *West Suburban Bank*, 2014 IL App (2d) 131146, ¶ 20 ("strict compliance with the statutes governing the service of process is required before a court will acquire personal jurisdiction over the person served"). In this case, the appellee failed to strictly comply with the statutory prerequisites for service by publication, and therefore, the service by publication upon the appellant was invalid. As previously stated, the failure to effect service as required by law deprived the trial court of personal jurisdiction over the appellant, and the judgments entered against her based on such defective service were void and must be vacated. See *Karbowski*, 2014 IL App (1st) 130112, ¶ 12; see also *BAC Home Loans Servicing*, 2014 IL 116311, ¶ 17; *Verdung*, 126 Ill. 2d at 547.

¶ 39                          III. CONCLUSION

¶ 40    For the foregoing reasons, we vacate the amended judgment of foreclosure and sale and subsequent order confirming sale entered by the circuit court of St. Clair County.

¶ 41    Vacated.

¶ 42    JUSTICES CATES, specially concurring:

¶ 43    I agree that the amended judgment of foreclosure and sale and the subsequent order confirming the sale must be vacated because plaintiff, Federal Home Loan Mortgage Corporation (Federal Home Loan) failed to meet the statutory prerequisites for service by publication. Therefore, I concur in the majority's order. I am compelled, however, to write this special concurrence to highlight the neglectful actions and omissions, not only by Federal Home Loan, but also its agent, ProVest Services, LLC. If defendant Harris had not filed her pleadings to vacate the judgment of foreclosure and this subsequent appeal, the home she purchased in 2004 would have been lost, without any semblance of due process. As will be more vividly illustrated by this special concurrence, the perfunctory and lethargic attempts to locate and personally serve defendant Harris violated her absolute right to notice of the foreclosure action and the opportunity to be heard before title to her property was taken.

¶ 44    Effective service of summons is a means to protect an individual's right to due process by allowing for proper notification of a pending action and the opportunity to be heard. *In re Dar. C.*, 2011 IL 111083, ¶ 61. Every defendant who has an action filed against

16

him in Illinois is entitled to receive the best possible notice of the action. *Bell Federal Savings & Loan Ass'n v. Horton*, 59 Ill. App. 3d 923, 927 (1978). Personal jurisdiction acquired by publication is only permitted in limited cases where personal service of summons could not be achieved, and then only after strict compliance with the requirements set forth in section 2-206 of the Code of Civil Procedure. 735 ILCS 5/2-206 (West 2016); *Bell Federal Savings & Loan Ass'n*, 59 Ill. App. 3d at 927. Section 2-206 of the Code requires a party to make "due inquiry" of defendant's whereabouts and "due diligence" to determine a defendant's place of residence. 735 ILCS 5/2-206. "Our courts have determined that these statutory prerequisites are not intended as *pro forma* or useless phrases requiring mere perfunctory performance, but, on the contrary, require an honest and well-directed effort to ascertain the whereabouts of a defendant by inquiry as full as circumstances permit." *Bank of New York v. Unknown Heirs & Legatees*, 369 Ill. App. 3d 472, 476 (2006). Where efforts made to comply with the statutory provisions have been "casual, routine, or spiritless, service by publication is not justified." *Id.*

¶ 45 The record shows that on June 26, 2017, two affidavits seeking to allow service by publication pursuant 735 ILCS 5/2-206 were filed in this case. One affidavit was executed by plaintiff's counsel. Counsel averred that defendant Harris and defendant Tidwell "reside or have gone out of this State and on due inquiry cannot be found, or are concealed within this State, so that process cannot be served on them." Counsel further averred that "diligent inquiry has been made as to the whereabouts of these defendants." Counsel did not state what investigation, if any, had been performed regarding the whereabouts of Harris or Tidwell, or that counsel had personal knowledge of whatever inquiries may have allegedly

17

been made. See Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013) (sworn statements must "be made on the personal knowledge of the affiants," and should "affirmatively show" that the affiant, if sworn as a witness, could testify competently thereto). The catch-all and conclusory statements in counsel's affidavits were largely based on hearsay and were woefully insufficient to satisfy the statutory requirements for service by publication.

¶ 46    The second affidavit submitted as the basis for allowing service by publication was executed by a "skip trace" investigator, who was employed by a company known as ProVest, LLC, whose corporate headquarter is in Tampa, Florida. ProVest's "skip trace" investigator conducted an online search to locate Harris and did not inspect the subject property. In the first section of the affidavit, the "skip trace" investigator averred that Harris "resides or has gone out of the state of Illinois, and on due inquiry cannot be found, or is concealed within the state of Illinois, so that process cannot be served upon them." The investigator further averred that service was attempted by a "ProVest LLC, a licensed private detective agency," and referred the reader to an attachment, marked as Exhibit B.

¶ 47    In the second section of the affidavit, the "skip trace" investigator stated that she had made a "diligent inquiry as to the whereabouts" of Harris, and referred the reader to an attachment marked as Exhibit A. Exhibit A is an "Affidavit of Due Diligence," made by the same investigator. As noted in the majority disposition, the "skip trace" investigator attached two separate affidavits of due diligence wherein the investigator claimed she had conducted a public records search on Harris and Tidwell, respectively. The record demonstrates, however, that the investigator attempted to locate the two individuals using

18

only one social security number and that the social security number did not belong to Harris.[3]

¶ 48 Exhibit B, attached to and referenced in the ProVest "skip trace" investigator's affidavit, included four individual affidavits and an inspection report, all prepared by Thomas Severit. Severit worked on behalf of ProVest and was assigned to serve process on Harris and Tidwell. A review of the affidavits and exhibits shows that Severit made only one attempt to serve Harris at her residence at 619 N. 7th Street. According to the "Affidavit of Special Process Server," Severit attempted to serve Harris at 10:40 a.m., on Friday, June 9, 2017. Severit averred that "after diligent investigation," he found a "vacant one-story beige frame not for sale utilities off one car attached garage yard extremely overgrown property is vacant and abandoned." Severit's affidavit provided few facts to support the conclusions that the subject property was vacant and abandoned.

¶ 49 Severit also completed a "Vacancy Affidavit," an "Affidavit of Abandonment," and a "ProVest Tenant and Property Inspection Form." These documents are "forms" that required the investigator to check any "boxes" that might be applicable to the property being inspected. The "ProVest Tenant and Property Inspection Form" showed that Severit inspected the subject property at 619 N. 7th Street on June 9, 2017, at 10:40 a.m. On the inspection form, Severit checked boxes indicating that the lawn was unkept; that the

_____

[3]On October 16, 2018, Federal Home Loan offered a supplemental affidavit stating that its law firm conducted an online search to determine whether Harris or Tidwell might be on active duty in the United States Military. The search results listed Harris's social security number as xxx-xx-3319, and Tidwell's as xxx-xx-3599. Had Federal Home Loan or its counsel compared the affidavits on file with its own records, they would have discovered the errors made by the ProVest "skip trace" investigator. This was a careless error that went undiscovered or ignored.

property was in poor condition; and that the utilities were off. Severit offered no facts to support these vague and conclusory descriptions of the property. On the "Vacancy Affidavit" form, Severit checked boxes indicating that that the lawn was not mowed and that the electric meter was not running. He also checked boxes indicating that there were no utility disconnection notices on the premises; that there was no uncollected mail; and, that there was no "for-sale" sign displayed. In a space to record other visual evidence that the property was unoccupied, Severit printed "utilities off; yard overgrown."

¶ 50    On the "Affidavit of Abandonment" form, Severit checked a box indicating the property was vacant. He also checked boxes indicating that the property was secured and not open; that the doors and windows were not boarded up; that there was no uncollected mail; and that were no legal notices and no "for sale" sign displayed. In a space for other comments, Severit printed, "utilities off; yard overgrown."

¶ 51    Severit's affidavits and his inspection report offered no explanation for how he determined that all utilities were off, nor did he describe the condition of the yard, other than to say it was not mowed or overgrown. There is no indication that he attempted to contact neighbors to obtain information on whether the subject property was occupied or vacant. The affidavits and the accompanying inspection form offer extremely limited facts to support a conclusion that the subject property was vacant or abandoned. To the contrary, the fact that the house was not boarded up, that there was no uncollected mail, and no other legal notices, could suggest that the house was occupied.

¶ 52    Severit also averred that he took photos of the subject property, and copies of five photos were attached as supporting exhibits. The time stamp on these photos indicates that

they were taken between 10:42:22 a.m., and 10:46:39 a.m. on June 9, 2017. The copies of the photographs, as displayed in the record, are of poor quality, and are too dark and shadowed to offer any evidence regarding the actual condition of the subject property. Other than the time stamp on the photos showing approximately a four-minute interval, there is no information regarding how long Severit remained at the subject property on June 9, 2017.

¶ 53    According to another affidavit in the record, Severit made one other unsuccessful attempt to serve Harris at a different address on Wednesday, June 14, 2017. Again, Severit filed an affidavit in which he averred that the property was vacant based on his conclusions that the utilities were off and the yard was overgrown. The record demonstrates that Severit filed nearly identical affidavits regarding his second attempt to serve defendant Tidwell, at a different address.

¶ 54    I have written separately to point out that the affidavits and other documents submitted by Federal Home Loan in support of its request for service by publication present an unfortunate example of "form over substance." Reviewing all the affidavits and reports together leads to one conclusion: Federal Home Loan did not comply with the prerequisites in section 2-206, and service by publication was not justified. The only common thread that supported Federal Home Loan's request for service by publication was the use of a form, developed by a Florida company, that did not provide sufficient facts to allow the trial court the opportunity to protect the due process rights of the homeowner against an overzealous mortgagor. This is of concern as Federal Home Loan has indicated that it was

21

in the "first tier foreclosure category," meaning that it had filed 175 or more foreclosure complaints on residential real estate in the calendar year preceding the pending action.

¶ 55 In conclusion, from my perspective, the record does not demonstrate that Federal Home Loan or ProVest made real, well-directed efforts to ascertain the whereabouts of Harris. Rather, their efforts could best be characterized as inept and spiritless. Service by publication is an " 'extraordinary means of serving notice' " (*Bank of New York Mellon v. Karbowski*, 2014 IL App (1st) 130112, ¶ 13 (quoting *Public Taxi Service, Inc. v. Aryton*, 15 Ill. App. 3d 706, 713 (1973))). Publication should be the exception, not the norm. Unfortunately, service by publication seems to have become more commonplace in mortgage foreclosure cases. As such, already overburdened trial courts must scrutinize and question the proffered affidavits and other documents underlying the request for service by publication. Only then can there be some confidence that the fundamental rights to due process of mortgagees, like Harris, can be protected. The failure to jealously protect this right to due process jeopardizes the fundamental rights of the homeowner and the ultimate loss of the home.