2023 IL App (1st) 220022-U

THIRD DIVISION
May 3, 2023

No. 1-22-0022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PPP-SCH INC. and YAMAN PARMAKSIZ, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants/Cross-Appellees, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| SVAP HOFFMAN PLAZA, L.P., SVAP HOFFMAN PLAZA GP | ) | |
| LLC, SVAP GP LLC, MICHELLE McCARTNEY, STERLING | ) | |
| ORGANIZATION, and SKYLINE DEVELOPMENT, LLC, | ) | |
| | ) | No. 2016 CH 14315 |
| Defendants | ) | |
| | ) | |
| (SVAP HOFFMAN PLAZA, L.P., SVAP HOFFMAN PLAZA | ) | |
| GP LLC, SVAP GP LLC, and STERLING ORGANIZATION, | ) | Honorable |
| | ) | Daniel J. Kubasiak |
| Defendants-Appellees/Cross-Appellants). | ) | Judge Presiding. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Affirming summary judgment for Landlord and against Tenant in a conversion
action where Tenant failed to provide any evidence of damages. Denial of
Landlord's request for attorney fees also affirmed where the basis for granting
attorney fees was raised for the first time on appeal.

¶ 2    This case involves a commercial landlord-tenant dispute. Specifically, plaintiff PPP-SCH, Inc. (Tenant), brought conversion claims against defendants, SVAP Hoffman Plaza L.P., SVAP Hoffman Plaza GP LLC and SVAP GP LLC (collectively Landlord), after Landlord removed Tenant's property from the leased premises.[1] Landlord, however, contended that the parties' lease had expired, that Landlord had provided the required notice to Tenant to vacate the property, and that, pursuant to the parties' lease, Tenant had waived its rights under the Forcible Entry and Detainer Act and specifically authorized Landlord to remove Tenant's property after Tenant refused to surrender the premises. Throughout the litigation, the parties generally argued as to the enforceability of the lease provision, with Tenant contending that the lease provision violated public policy. The trial court, however, ultimately concluded that it need not determine whether the provision was enforceable. The court found that, even if Landlord's actions were authorized by the lease, Landlord had wrongly withheld Tenant's property after removing it. However, at summary judgment, the court found that, two years after the close of discovery, there was still no evidence as to the fair market value of any of the property at issue in Tenant's conversion claims. The court entered summary judgment in Landlord's favor, but rejected Landlord's request for attorney fees. In this court, Tenant challenges the court's grant of summary judgment for Landlord. Landlord cross-appeals, arguing that the trial court erred in denying its request for attorney fees.

¶ 3    This lawsuit began on November 1, 2016, when Tenant filed a complaint against Landlord, alleging claims of trespass, private nuisance, conversion, and a request for an injunction. Tenant alleged that it was a month-to-month tenant and occupant of commercial

---

[1] There were several different iterations of the parties involved as plaintiffs and defendants during the course of these proceedings. For convenience, this court will collectively refer to plaintiffs as "Tenant," and defendants as "Landlord," except in instances where differentiating the particular plaintiff or defendant is necessary.

property located at 1029 North Roselle Road in Hoffman Estates (the premises), in which it operated a Papa John's Pizza restaurant. Tenant further alleged it had received a letter from Landlord on September 27, 2016, notifying Tenant of Landlord's intention to demolish the premises on November 1, 2016. Tenant stated that it notified Landlord on October 31, 2016, that it was still in possession of the premises, that the scheduled demolition should be "halted immediately," and that "any attempt to dispossess" Tenant must be "done pursuant to the Forcible Entry and Detainer Act." Tenant further asserted that on November 1, 2016, Landlord unlawfully dispossessed Tenant of the premises by changing the locks, and unlawfully removed Tenant's "personal property, business equipment, furniture, and/or fixtures" from the premises.

¶ 4     The next day, on November 2, 2016, Tenant filed an emergency motion for a temporary restraining order against Landlord. Tenant again alleged that it was unlawfully dispossessed of commercial property that it was entitled to occupy, and sought the "entry of a temporary restraining order against [Landlord] preventing [Landlord] *** from trespassing and/or demolishing the property occupied by [Tenant] or otherwise interfering with [Tenant]'s ongoing use and enjoyment [of] the property."

¶ 5     On November 7, 2016, Landlord filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (Code), alleging that Tenant could not maintain the claims in its complaint, because it did not have a possessory interest in the premises, and because Landlord's acts were specifically authorized by the expired lease between the parties.

¶ 6     On November 8, 2016, the court entered an order granting Tenant's Emergency Motion for a Temporary Restraining Order, concluding that Tenant had established a clear and ascertainable right in need of protection, a likelihood of success on the merits, irreparable harm absent injunctive relief, and no adequate remedy at law. Tenant was "restored to possession" of

the premises. The court noted that it was "now treat[ing]" the motion for a temporary restraining order as a motion for a preliminary injunction, and scheduled the matter for hearing on November 30, 2016.

¶ 7    On November 21, 2016, Landlord filed a verified answer and affirmative defenses. Landlord admitted that it had served Tenant with notice that Tenant's belongings would be removed and put in storage if Tenant did not vacate by October 31, 2016, and generally denied the remaining allegations. As affirmative defenses, Landlord alleged (1) that the lease required Tenant to surrender the premises on or before October 31, 2016, and that Tenant had no right to possession on November 1, 2016; (2) that the equitable doctrine of "unclean hands" barred Tenant's claim because it had wrongfully withheld possession of the premises; (3) that the lease specifically authorized Landlord to enter into the premises and remove Tenant in the event of a default; and (4) that Tenant had no right to use and enjoyment of the premises where it had defaulted under the Lease by failing to surrender the premises.

¶ 8    The same day, Landlord filed a "Verified Counterclaim" against Tenant. Landlord alleged it needed to begin demolition of the premises on November 1, 2016, to deliver the premises to a new tenant. As a "direct and proximate result" of Tenant's breach and failure to surrender the premises by October 31, 2016, Landlord claimed damages in an amount exceeding $14 million, including damages accruing under the lease for wrongfully holding over, for construction delays, and for losing the new tenant.

¶ 9    On November 30, 2016, the court held an evidentiary hearing on Tenant's motion for a preliminary injunction, at which the court heard testimony, including from Yaman Parmaksiz, the president and shareholder of the Papa John's franchise which had been operating out of the premises. Following testimony, the court noted that it had presided over a

"summary proceeding *** a few weeks ago, and based upon the contents of the verified complaint as well as the verified motion for a temporary restraining order, and as [Landlord] had not filed the verified answer to essentially contest the accuracy of any of the allegations contained within the complaint, [the court had] granted the motion for a temporary restraining order, as based upon the information that was appropriately before"

the court at that time. The court found, however, that "[t]oday [wa]s a different situation" as the court had "now ha[d] an opportunity to hear evidence from all of the parties." The court explained that one necessary element to grant injunctive relief

"deals with whether or not [there] would be an adequate remedy at law in the event that the [Tenant] goes forward and succeeds on the underlying cause of action. According to the testimony of [Parmaksiz], he testified that he could calculate the lost profits. *** So as there is an adequate remedy at law, [Tenant's] motion is denied."

The court then entered a written order denying Tenant's motion for a preliminary injunction.

¶ 10    On January 5, 2017, Tenant filed a motion for leave to file an amended complaint. Tenant indicated that it sought to add Parmaksiz as a co-plaintiff, and that it also sought to file a "complaint for conversion." Tenant also added Michelle McCartney as a defendant, who it alleged was an "employee of one or more of the corporation Defendants" and who "personally directed the events described in the complaint."

¶ 11    Tenant was granted leave to file its amended complaint on January 19, 2017. The amended complaint set forth four counts, each for conversion, against each of Landlord defendants—SVAP Hoffman Plaza, LP, SVAP Hoffman Plaza GP LLC, SVAP GP LLC, and

McCartney. Tenant requested that judgment be entered in its favor and against each defendant, "jointly and severably," in an amount in excess of $50 thousand, for the "value of property converted," plus "costs, attorneys fees and punitive damages." The amended complaint removed all claims related to trespass, private nuisance, and injunctive relief.

¶ 12 On March 15, 2017, Landlord filed an "Amended Counterclaim" and a "Verified Third Party Complaint," adding a count of trespass, in which it alleged that on or about December 22, 2016, Parmaksiz forcibly entered and broke a lock to property owned by Landlord at 1067 North Roselle Road in Hoffman Estates, and while on the property, Parmaksiz damaged equipment that was the subject of the instant lawsuit. Landlord alleged that it had been prejudiced in "prov[ing] up the defense of its case" by the "trespass and actions during the trespass." Landlord further argued that if it was found liable for damages to Tenant, Parmaksiz should also be found liable.

¶ 13 On April 13, 2017, Tenant filed a Second Amended Complaint, adding as defendants Sterling Organization—which it asserted was the entity that McCartney claimed to work for— and Skyline Development, LLC—which it alleged was the company hired by Landlord to remove Tenant's property from the premises. Tenant alleged four counts for conversion, against each of the four current Landlord defendants. Tenant also added "counts" against Sterling Organization and Skyline Development, LLC, although Tenant did not allege any particular cause of action against those defendants.

¶ 14 On July 17, 2017, Tenant filed a Motion to Strike Landlord's affirmative defenses, arguing that Landlord "blatantly violated the law," and that the Landlord's affirmative defenses were "poor excuses" and should not be recognized as legitimate defenses. On August 10, 2017, the court held a hearing on Tenant's motion to strike, although no transcript of that proceeding appears in the record on appeal. Following the hearing, the court entered a written order granting

in part and denying in part Tenant's motion. The court struck Landlord's affirmative defense based on the doctrine of unclean hands, but allowed the other three affirmative defenses to stand.

¶ 15    On August 24, 2017, Tenant filed a motion to reconsider the August 10, 2017 order. Specifically, Tenant alleged that the court had wrongly concluded that a lease provision could waive the Tenant's rights under the Forcible Entry and Detainer Act, citing other cases that it claimed had been overlooked by the court. Tenant asked the court to reconsider that conclusion, or in the alternative, to certify a question for appeal pursuant to Illinois Supreme Court Rule 308.

¶ 16    On September 25, 2017, Landlord filed a response to Tenant's Motion for Reconsideration. Landlord argued that the authority Tenant relied on was not new and that it did not hold that a commercial tenant is prevented from waiving rights under the Forcible Entry and Detainer Act. Instead, the authority supported a conclusion that a commercial landlord could exercise self-help if the lease allows it. Additionally, Landlord argued that the issue was not proper for certification, as Tenant had not "even identif[ied] the question" that it sought to have certified for appeal. Landlord also noted that Tenant was suing for conversion, and had made no claim of illegal eviction.

¶ 17    On November 30, 2017, the court denied reconsideration. The court explained that Tenant's motion to reconsider relied on two cases, both of which expressly avoided ruling on whether a commercial lease could waive a tenant's rights under the Forcible Entry and Detainer Act. The court found no change in existing law nor error in the court's previous application of existing law, and denied Tenant's motion to reconsider. The court, however, agreed to grant Tenant's alternative request, and certified the following question for appeal:

> "Is a provision within a commercial lease permitting a landlord to enter the leased space after lease expiration for the purpose of removing the property of a tenant

without availing itself of the Forcible Entry and Detainer Act, 735 ILCS 5/9-101, *et seq.,* enforceable?"

¶ 18    On January 31, 2018, this court denied Tenant's petition for leave to appeal.

¶ 19    Meanwhile, on October 12, 2017, Tenant filed a "Motion for Leave to File Second Amended Complaint at Law (Corrected)" to correct typographical errors in the count against Sterling Organization.

¶ 20    Pursuant to a September 20, 2018 order, the matter was set for a 7-day jury trial beginning May 6, 2019.

¶ 21    On December 6, 2018, Tenant filed a motion for leave to file a third amended complaint, to "add counts sounding in trespass and unlawful eviction." This time, Tenant alleged 18 counts, including counts of conversion, trespass, and unlawful eviction against each of the six defendants.

¶ 22    On December 19, 2018, the court entered a written order, denying leave to file the third amended complaint. On December 28, 2018, Tenant moved to reconsider the December 19, 2018, order, and that motion was denied on January 9, 2019.

¶ 23    On January 15, 2019, the parties filed cross-motions for summary judgment. In the Landlord's motion for summary judgment, Landlord argued, among other things, that it was authorized by the parties' lease to remove equipment from the space, that there was no evidence of actual damages, and that lost profits, lost time and lost investment opportunity was not available as part of a conversion claim. Landlord relied, in part, on *Sherman House Hotel Co. v. Cirkle*, 136 Ill. App. 381, 384 (1907), in which the court considered whether a tenant could "waive the civil remedy provided by the [Forcible Entry and Detainer] statute and authorize a re-entry as at common law," ultimately concluding in the affirmative.

¶ 24   Tenant argued in its motion for partial summary judgment that a month-to-month tenancy existed between the parties, which required Landlord to use the Forcible Entry and Detainer Act to retake possession of the property. Tenant further argued that "even if the Court holds that the subject Lease was in effect, [Landlord] did not follow the terms of that Lease before undertaking their self-help eviction," and "even if the Landlord had the right to retake possession it had no right to commit the tort of conversion to [Tenant's] property."

¶ 25   In Tenant's motion for summary judgment as to Landlord's counterclaim, it claimed that no damages had been incurred by Landlord, submitting an affidavit from Parmaksiz averring that he had paid rent.

¶ 26   Also on January 15, 2019, Tenant filed a "Motion to Submit Punitive Damages to the Jury." Tenant alleged that Landlord's Acts were "willful, oppressive, a reckless indifference and disregard for the rights of others, carried out under the cover of darkness, and then lied about inside and outside of court." Tenant requested that the court "permit a jury to consider whether punitive damages are appropriate under the circumstances which will be proved in this matter."

¶ 27   On February 11, 2019, Landlord filed a response to Tenant's motion for summary judgment as to their counterclaim, arguing that the lease provided for additional holdover rent, which Tenant did not claim to have paid. Landlord also alleged that it was entitled to reimbursement of the costs of relocating Tenant's equipment because once Tenant violated the lease by failing to surrender the premises, Landlord was entitled under the lease to perform Tenant's obligations and then obtain reimbursement.

¶ 28   The same day, Landlord also filed a response to Tenant's motion for partial summary judgment. Landlord asserted that Tenant made no analysis as to how it had met the elements of a

conversion cause of action. Instead, Tenant merely asked the court to ignore Landlord's remedies under the lease, without any authority for invalidating the relevant lease provision.

¶ 29    Also on February 11, 2019, Landlord responded to Tenant's Motion to Submit Punitive Damages. Landlord argued that it could not be liable for punitive damages because, among other things, it had exercised remedies that were provided by the lease, and Tenant had engaged in wrongful acts by "disregard[ing] [its] legal obligations to vacate the Premises."

¶ 30    On February 11, 2019, Tenant filed a response to Landlord's motion for summary judgment. Tenant pointed out that the *Sherman House Hotel Co.* case relied on by Landlord was from 1907, and argued that the court should not find it "binding or persuasive."

¶ 31    On May 16, 2019, the court entered a written order on the parties' cross motions for summary judgment and on Tenant's motion to submit punitive damages to the jury. The court noted that in

> "ruling on the pending motions, the court was tasked with properly construing the issues prevalent in the parties' pleadings. In the motions for summary judgment on the complaint, both parties argued heavily the issue of whether the subject Lease provision waiving [Tenant's] right to the civil remedy under the Forcible Entry and Detainer Act (FEDA), 735 ILCS 5/9-101, is enforceable. However, after a thorough review of the record and the allegations against [Landlord], the court has determined that the sole issue to be resolved in this matter is whether the record supports a finding of conversion as alleged in each count against [Landlord]. As such, whether [Landlord] [was] required to proceed under FEDA rather than under the terms of the Lease need not be addressed."

¶ 32   Regarding conversion, the court noted Landlord's argument that "by agreeing to the terms of the Lease, [Tenant] authorized [Landlord] to enter upon the premises and remove the subject equipment on November 1, 2016." The court found, however, that Landlord

> "had no right to retain [Tenant's] property after the Lease's expiration on November 1, 2016. *** [Tenant] demanded return to the Hoffman Estates Police Department, and thereafter filed a lawsuit in the Circuit Court of Cook County, Illinois. Yet, [Landlord] failed to provide [Tenant] a key to the locked door to access their property, depriving [Tenant] of ownership and control. Thus, the court finds that [Landlord] wrongfully retained possession of [Tenant's] property after the Lease's expiration on November 1, 2016, and [Tenant] [is] therefore entitled to damages to the wrongfully retained property."

Based on the above, the court found no genuine issue of material fact that Landlord "wrongfully retained possession of [Tenant's] property after the Lease's expiration on November 1, 2016 and failed to return the property on [Tenant's] demand." The court noted, however, that Tenant "provide[d] no evidence and have not alleged in their complaint that Skyline took any actions to wrongfully retain the subject property after the Lease's expiration on November 1, 2016," and accordingly, Skyline could not "be liable for damages resulting to the wrongfully retained property."

¶ 33   Finally, the court noted that Tenant had "failed to identify the fair market value of their equipment that they claim under conversion" and continued the matter for a "prove-up on damages to the wrongfully retained property." The court explained that there is a "fundamental rule, with no exceptions, that a party must recover on and according to the case she has made for

11

herself by her pleading," and denied Tenant's "other requests for damages, such as damages for lost profits and loss on return of capital."

¶ 34  As to Tenant's motion for summary judgment on Landlord's counterclaim, the court found that Tenant's affidavit indicating that rent had been paid was not sufficient to entitle Tenant to summary judgment, where Landlord claimed that Tenant was obligated to pay additional holdover rent and damages accruing under the lease for wrongfully holding over, for construction delays, and for losing a tenant.

¶ 35  Finally, regarding Tenant's request to submit punitive damages to the jury, the court noted Tenant's argument that Landlord's actions were "willful" and "calculated." The court pointed out, however, that Illinois has a "longstanding public policy favoring freedom to contract," concluding that Landlord could not be held liable for punitive damages for exercising remedies that were provided for in the lease, especially where Landlord had provided Tenant with the required notices before acting. In those circumstances, the court found that Landlord's "conduct cannot be described as outrageous or malicious" and, accordingly, there was no "basis on which to award punitive damages" on Tenant's conversion claims.

¶ 36  On August 28 and 29, 2019, parties filed competing motions *in limine*. Landlord, sought, among other things, that Tenant be precluded from entering evidence regarding the value of the property for failure to disclose any such evidence in discovery; and regarding whether Landlord performed its obligations under the lease. Tenant filed five motions *in limine*, asking that court bar any evidence argument or reference (1) that Landlord performed its obligations under the lease; (2) that Tenant did not have the exclusive right of possession of the premises; (3) that Landlord "had the right to disregard the Forcible Entry and Detainer Act and remove [Tenant's] property and business from the subject premises"; (4) regarding "any reason why [Landlord]

chose to convert [Tenant's] property" and (5) that Tenant acted unreasonably in purchasing new equipment or that Tenant "did not meet [its] duty to mitigate damages."

¶ 37    On September 20, 2019, the court entered a written order. The court denied Tenant's motions *in limine*. Landlord's first motion *in limine* was taken under advisement, and its second was granted.

¶ 38    On March 17, 2020, Tenant filed a motion to reconsider "portions of the court's May 16, 2019 ruling." Tenant asked the court to "reconsider and/or clarify its ruling so as to permit it to seek damages 'to furnish complete indemnity' of all of [Tenant]'s actual damages, and further to permit it to request punitive damages."

¶ 39    Landlord responded on April 7, 2020, that Tenant provided no basis to reconsider, and that it was just repeating the same arguments that had been addressed "*ad nauseum*" at various stages of the case. Landlord further argued that Tenant was simply repeating its argument that the lease violated Illinois public policy, that Tenant should be able to recover lost profits on its conversion action, and that it should not be bound by their pleadings about what theories it could advance at trial.

¶ 40    On June 12, 2020, Tenant's motion to reconsider was denied in a written order. The court affirmed "its prior ruling and f[ound] that [Tenant] ha[d] not established a basis for punitive damages." The court recognized, however, that Tenant had

> "previously sought to file a third amended complaint that the court denied, taking
> into consideration that [Tenant] had already filed two previous complaints and the
> case was nearing a trial date. Nevertheless, considering all of the time that has
> lapsed, the difficulties all have experienced due to the COVID-19 disruption, and
> that there is no new trial date, the court will permit [Tenant] to amend the existing

counts of the complaint, if [Tenant] believe[s] [it is] necessary, to more fully set forth [its] damages under the current conversion counts, and/or [to] add an additional breach of contract count, absent punitive damages."

¶ 41    Thereafter, on September 8, 2020, Tenant filed a Fourth Amended Complaint, containing 41 counts, comprised of four counts of breach of contract; seven counts of conversion; six counts of trespass; six counts of illegal eviction; six counts of negligence; six counts of intentional infliction of emotional distress; and six counts of negligent infliction of emotional distress.

¶ 42    On September 22, 2020, Landlord filed a Section 2-619.1 motion to dismiss and for sanctions. Landlord asserted that, although the court gave Tenant leave to file a fourth amended complaint for the limited purposes of repleading their conversion counts' damage theory and to add a breach of contract count, Tenant did not comply with the court's instructions and instead added "106 new allegations and 35 new counts." Accordingly, Landlord asked the court to strike all the new claims for failure to comply the court's order or to obtain leave to add them. Landlord further argued, among other things, that (1) Tenant's damages theory was still legally flawed and conclusory; (2) Tenant did not allege each element for breach of contract, including performance and privity; (3) Tenant could not satisfy the relevant factors set out in *Loyola Academy v. S&S Roof Maintenance, Inc.,* 146 Ill. 2d 263, 273 (1992) to be considered in determining whether to grant leave to amend a pleading (the *Loyola* factors); (4) many of the new allegations and new counts had already been decided in this case or were "alien" to anything previously alleged in the prior four years of litigation; and (5) the new counts failed to allege causes of action.

¶ 43    On November 30, 2020, Tenant moved to voluntarily dismiss McCartney from the case, and the motion was granted on December 8, 2020.

14

¶ 44    On February 10, 2021, the court entered a written order on Landlord's "motion to dismiss [Tenant's] fourth amended complaint pursuant to 735 ILCS 5/2-619.1."

¶ 45    The court first addressed Landlord's argument that the counts, other than breach of contract and conversion, should be dismissed with prejudice for failure to obtain leave to plead them. The court agreed with Landlord that it had given Tenant leave "solely to amend their conversion counts to articulate a new damage theory and to add a breach of contract count," and that it never gave Tenant "leave to add claims of trespass, illegal eviction, negligence, intentional infliction of emotional distress, or negligent infliction of emotional distress." Rather than following the court's order, Tenant had added "35 new counts" and "106 new allegations." The court concluded that those counts "must be stricken with prejudice as a result."

¶ 46    Alternatively, the court concluded that even if leave had been granted, Tenant could not meet the four *Loyola* factors, namely, "(1) whether the proposed amendment would cure the defective pleading; (2) whether the other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy,* 146 Ill. 2d at 273. The court explained:

> "As to the first *Loyola* factor, [Tenant is] not curing a defective plead[ing], but [is] rather seeking to add new claims in counts XII through XLI. Second, [Landlord] would be largely prejudiced by allowing [Tenant] to plead 32 new counts with four years of litigation completed and only a trial to be completed. As to timeliness, as stated, four years of litigation have ensued, as well as an interlocutory appeal and cross-motions for summary judgment. The court cannot allow [Tenant] to bring new counts that would require continuance for new

15

preparations for trial. Lastly, during the four years of litigation, [Tenant] amended [its] complaint three times, and [Tenant] had many opportunities to amend [its] pleadings previously. As such, [Tenant's] attempt to plead 32 additional counts fails to meet the *Loyola* factors set forth above.

Accordingly, the court grants [Landlord's] motion to dismiss counts XII through XLI with prejudice."

¶ 47 Then court then turned to Tenant's allegations for breach of contract. The court noted Landlord's argument that Tenant had not sufficiently alleged its own performance of its obligation under the Lease to surrender the leased premises. However, taking all well-pled facts and their reasonable inferences as true, the court concluded that Tenant had sufficiently stated a claim for breach of contract to survive Landlord's motion to dismiss.

¶ 48 As to Tenant's arguments that it was entitled to more than just the fair market value of the converted property plus interest, the court noted that Tenant had cited one case to allege that the court should provide "complete indemnity" to an aggrieved party, however, the case supported the conclusion that damages for the wrongful conversion of property is the fair market value of the property at the time of the conversion with interest. The court further explained that Tenant had not cited any Illinois case law awarding a plaintiff lost profits, lost investment time, or attorney fees for conversion. Accordingly, the court reiterated its prior decision to limit recovery for the conversion counts to the fair market value of Tenant's equipment and prejudgment interest thereon.

¶ 49 Finally, the court denied Landlord's request for sanctions under Illinois Supreme Court Rule 137. The court agreed that Tenant exceeded the court's order in alleging additional counts,

however, the court declined to sanction Tenant for what it described as counsel's "zealous but unsuccessful" attempt to plead additional claims.

¶ 50    On September 1, 2021, the parties filed cross motions for summary judgment. Landlord filed a motion for summary judgment arguing that there was no evidence of damages to withstand summary judgment. Landlord additionally argued that Tenant could not recover for breach of contract because Tenant failed to perform its own lease obligations. Tenant filed a motion for partial summary judgment on the breach of contract counts, alleging that the record was clear that Landlord had "no right to enter" the premises for the "self-help eviction of November 1, 2016," and all that remained for determination was the amount of damages from Landlord's breach. Tenant also alleged, as to breach of contract, that Landlord could not rely on the remedies section of the lease, because that section required Landlord to provide an opportunity to cure any default, and because the operable contract was not the lease, but "post-lease letters, oral agreement, or a matter of performance."

¶ 51    On September 30, 2023, Tenant filed a response to Landlord's summary judgment motion. In response to Landlord's argument that there was no evidence of damages, Tenant asserted that the depositions of Parmaksiz, its expert, and two employees of Papa John's "support[ed] the fact that the used restaurant equipment was of considerable value." Tenant argued that the restaurant had revenue of "roughly one million [dollars] per year," and that the facts supported a conclusion that its "property was valuable and allowed [Tenant] to earn a substantial living and employ 25 people who had families."

¶ 52    On December 22, 2021, the court entered a written order. Regarding Tenant's claims of breach of contract, the court explained that the lease expired on July 31, 2016, and that pursuant to the applicable terms of the Lease, Tenant became a "hold-over" tenant. The court concluded

that section 19.18 of the Lease, entitled "Hold-Over," controlled Tenant's claims for breach of contract. That section

> "provide[d] two scenarios if Tenant holds over after the expiration of the term. If Landlord gives written consent, then Tenant's right to remain in the premises is month-to-month paying a 3% increase in rent, and Landlord may terminate that possession upon 30 days' written notice. Tenant's rent is increased to 125% of the last rent due under the Lease if Landlord does not give written consent to the hold-over."

¶ 53    The court further explained that Landlord had complied with its obligations under the lease by giving Tenant 30 days' written notice on September 22, 2016, requiring Tenant to vacate by October 31, 2016. Accordingly, the court thus found that "Tenant was in breach of the Lease as of 12:00 a.m. on November 1, 2016, when it failed to timely vacate the premises when the Lease expired at 11:59 p.m. on October 21, 2016." At that time, Tenant became a "tenant at sufferance whose 'possession can be put to an end whenever the landlord, acting promptly, wishes; no notice to quit or demand for possession is necessary.' " Citing *Roth,* 359 Ill. App. 3d at 1027. Accordingly, the court found that "Tenant was *** the first party in breach, and therefore Tenant cannot maintain an enforcement action because it did not first satisfy its obligations under the Lease." The court also awarded summary judgment on the breach of contract counts to those Landlord defendants who were not parties to the lease.

¶ 54    The court then addressed the remaining conversion counts, noting that Landlord argued that Tenant had failed to produce any evidence in discovery about the fair market value of the property converted, while Tenant argued that the evidence showed that Tenant's "property was

valuable and allowed [Tenant] to earn a substantial living and employ 25 people who had families."

¶ 55    The court noted, however, that Tenant had not pointed to "any evidence, such as discovery responses, affidavits, or deposition transcripts to support their conversion claim. Considering that the case is at the summary judgment stage, the court cannot speculate as to damages." The court explained that Tenant need not prove its case at summary judgment, but it needed to "present some factual basis to support its claim." The court specifically noted that Parmaksiz testified during his deposition that he did not have any knowledge of the value of the equipment, and that Landlord asked Tenant in a discovery interrogatory to identify the fair market value of any property subject to Tenant's conversion claim, and Tenant did not identify any evidence of fair market value in response.

¶ 56    The court explained that

> "discovery of this five year old case was closed more than two years ago, and [Tenant] still has not disclose[d] evidence regarding the fair market value at the time of the conversion. As such, because Tenant never provided any evidence to support the fair market value of the property allegedly converted, the court finds that summary judgment in [Landlord's] favor and against [Tenant] is proper under Illinois law."

¶ 57    The court therefore granted Landlord's motion for summary judgment, and denied Tenant's motion for partial summary judgment. The court ended the written order by stating: "This is a final order disposing of the matter in its entirety."

¶ 58    Following the above order, Tenant filed a notice of appeal on January 4, 2022.

¶ 59    Thereafter, on January 21, 2022, Landlord filed a petition for attorney fees. Landlord asserted that the lease provided that where a party "assumed legal expenses due to any dispute over the provisions of th[e] lease, the prevailing party shall pay legal expenses and fees of the non-prevailing party." Landlord argued that it was the prevailing party, and requested $177,799.25 in fees plus $17,113.33 in costs.

¶ 60    Tenant responded arguing, among other things, that Landlord was not the prevailing party.

¶ 61    On July 21, 2022, Landlord's petition for attorney fees was denied. The court explained that Tenant had been "successful in obtaining a TRO on November 8, 2016, though not a preliminary injunction on November 30, 2016, *** [and] [Tenant] was then successful in obtaining summary judgment on its conversion claim on May 16, 2020, though unsuccessful in later receiving money damages consistent with that judgment." The court concluded that both parties had obtained favorable rulings, and found neither to be "the prevailing party" under the lease. Accordingly, the court denied Landlord's petition for attorney fees.

¶ 62    About a week later, on July 27, 2022, Landlord filed a motion to voluntarily dismiss its counterclaim "pursuant to 735 ILCS 5/2-1009(a) without prejudice." The court granted that order on August 2, 2022, dismissing the counterclaim "without prejudice pursuant to 735 ILCS 5/2-1009(a)." The court further wrote: "This is a final order disposing of all pending matters, as plaintiff's complaint was disposed of in a final order by the court on December 22, 2021."

¶ 63    On August 8, 2022, Landlord filed a notice of cross-appeal.

¶ 64    In this court, Tenant challenges the granting of summary judgment against it, arguing that Landlord's "self-help was illegal, actionable and a bar to any asserted defense," that Landlord was required to use the Forcible Entry and Detainer Act to retake possession of the property, and

that Tenant should have been able to proceed in pursuing punitive damages against Landlord. Landlord cross-appeals, contending that the court erred in denying its request for attorney fees.

¶ 65    As an initial matter, Landlord asserts that Tenant's appeal should be dismissed for lack of this court's jurisdiction because Tenant's notice of appeal "was filed prematurely." Landlord asserts that the December 22, 2021 order from which Tenant appealed was not a final order because Landlord's counterclaim remained pending. Tenant, however, asserts that the December 22, 2021 order, was a final order, pointing to its language which stated that it was "a final order disposing of the matter in its entirety."

¶ 66    An appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal. *Secura Insurance Co. v. Illinois Farmers Insurance Co.,* 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its [own subject matter] jurisdiction before proceeding in a cause of action regardless of whether either party has raised the issue."). Our supreme court has stated that the ascertainment of a court's own jurisdiction is one of the "most important tasks of an appellate court panel when beginning the review of a case." *People v. Smith,* 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal[.]"); *R.W. Dunteman Co. v. C/G Enterprises, Inc.,* 181 Ill. 2d 153, 159 (1998) ("A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action.").

¶ 67    Our jurisdiction is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. *In re Marriage of Verdung,* 126 Ill. 2d 542, 553 (1989). Pursuant to Rule 301, "[e]very final judgment of a circuit court in a civil case is appealable as of right." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). Generally, parties may only appeal from final orders disposing of every claim in a case. *John G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 339,

(2001). Our supreme court defines a claim as "any right, liability or matter raised in an action." *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 465 (1990).

¶ 68    We agree with Landlord that the order of December 22, 2021, was not a final order disposing of all claims. Although the court characterized the order as a "final order disposing of the matter in its entirety," the order only disposed of Tenant's claims against Landlord—Landlord's counterclaim against Tenant remained pending.

¶ 69    However, a judgment is final for appeal purposes if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy *or a separate part thereof* such that, if affirmed, the only thing remaining is to proceed with the execution of the judgment. *In re Marriage of Gutman,* 232 Ill. 2d 145, 151 (2008); *Verdung,* 126 Ill. 2d at 553. Under Rule 304(a) "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Conversely, "[i]n the absence of such a finding, any judgment that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable and is subject to revision at any time before the entry of a judgment adjudicating all the claims, rights, and liabilities of all the parties." *Id.*

¶ 70    Although the December 22, 2021, order was final as to Tenant's claims against Landlord, such judgment is not appealable under Rule 304(a) unless the court makes the requisite finding that there is no just cause for delay in enforcement or appeal. *Id.* See also *Gutman,* 232 Ill. 2d at 151 ("Absent a Rule 304(a) finding, a final order disposing of fewer than all of the claims is not

an appealable order and does not become appealable until all of the claims have been resolved.") The December 22, 2021, order, however, did not contain a Rule 304(a) finding.

¶ 71 Accordingly, we agree with Landlord that Tenant's notice of appeal filed January 4, 2022 was premature. That conclusion, however, does not end our inquiry. A premature notice of appeal can be saved under Illinois Supreme Court Rule 303(a)(2), which provides that a notice of appeal filed before the final disposition of any separate claim becomes effective when the order disposing of the claim is entered. Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017); see also *In re Marriage of Valkiunas & Olsen*, 389 Ill. App. 3d 965, 967 (2008) ("subsection (a)(2) protects the rights of an appellant who has filed a premature notice of appeal, by making the notice of appeal effective when the order denying a postjudgment motion or resolving a still-pending separate claim is entered. As amended, the rule acts to 'save' appeals that would otherwise be premature.").

¶ 72 Here, the court entered a voluntary dismissal of Landlord's counterclaim on August 2, 2022. The Illinois Supreme Court has made clear that a voluntary dismissal that disposes of all remaining claims in the case makes appealable those orders preceding the voluntary dismissal that were "final in nature." *Dubina*, 178 Ill. 2d at 503; see also *Hudson*, 228 Ill. 2d at 468.

¶ 73 Accordingly, Tenant's notice of appeal became effective once the trial court issued an order disposing of Landlord's counterclaim. Ill. S.Ct. R. 303(a)(2) (eff. June 4, 2008); *Hollywood Boulevard,* 2014 IL App (2d) 131165, ¶ 28 ("to the extent that [appellant] challenges only the undisturbed portion of the [original] judgment, he was not required to file a new or an amended notice of appeal after the trial court amended the judgment. [Appellant's] premature notice of appeal * * * became effective once the court disposed of his post judgment motion * * * and it confers jurisdiction on this court to review the undisturbed portion of the [original] judgment.").

Thus, we have jurisdiction to consider the trial court's grant of summary judgment for Landlord and against Tenant. *In re Marriage of Valkiunas & Olsen*, 389 Ill. App. 3d 965, 968 (2008) (internal quotation marks omitted) ("the plain meaning of [R]ule [303(a)(2)] is that the notice of appeal becomes effective on the date the impediment to our jurisdiction is removed.")

¶ 74    Landlord next argues that this court should strike Tenant's opening brief for failure to comply with Illinois Supreme Court Rule 341. Specifically, Landlord asserts that Tenant's brief fails to include citations to the record, and that Tenant "make[s] hyperbolic statements regarding the facts without citing the record to support those arguments." This court generally agrees with Landlord's characterization of Tenant's brief.

¶ 75    Our supreme court's rules governing appellate briefs are mandatory. *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 7. A party's failure to comply with the rules runs the risk that this court will strike the offending portions of a noncompliant brief, or, in rare cases, dismiss an appeal for serious rule violations. *Collier v. Avis Rent A Car System, Inc.*, 248 Ill. App. 3d 1088, 1095 (1993). However, striking an appellate brief or dismissing an appeal are harsh sanctions, and we will generally impose such sanctions only when the violations of the rules hinder our effective appellate review. *Hall,* 2012 IL App (2d) 111151, ¶ 15. Although Tenant violated Supreme Court Rule 341, we decline to strike its brief or dismiss the appeal. In spite of the deficiencies, Tenant's challenge is clear and the merits of the appeal can be readily ascertained. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2011). However, any statements of fact in Tenant's brief that are not supported by the record on appeal, will not be considered by this court. See *Coleman v. Windy City Balloon Port, Ltd.*, 160 Ill. App. 3d 408, 419 (1987) (internal citations omitted) ("Without adequate support in the record, an allegation included in the statement of facts contained in an appellate brief lies outside

the record; such unsupported factual references should be stricken and not considered on appeal from summary judgment adverse to the plaintiff.").

¶ 76    Before turning to the merits of Tenant's appeal, we note that Landlord further asserts that Tenant waived any review of the trial court's grant of summary judgment on Tenant's claims of breach of contract. Specifically, the trial court in this case granted summary judgment to Landlord and against Tenant on Tenant's claims involving both breach of contract and conversion. Landlord asserts, however, that Tenant did not include any reference to the breach of contract counts in its "Issues Presented for Review" section, and that the only reference to breach of contract in the opening brief is one sentence, in which it asserts that a provision of the lease "should not have been considered as a defense to [Tenant's] request for punitive damages, conversion, breach of contract, or illegal eviction." In Tenant's reply brief, Tenant entirely fails to respond to Landlord's allegation of waiver.

¶ 77    Based on our review of the appellant's brief, it is unclear if Tenant intended to challenge the granting of summary judgment on its claims of breach of contract. However, even if the above could be read to challenge the trial court's decision on this basis, Tenant's passing reference to breach of contract is not sufficient to invoke appellate review. Supreme Court Rule 341 (eff. Oct. 1, 2020), requires appellants to include cohesive argument and citation to relevant authority to support each of their claims of error. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12 (mere contentions, lacking argument or citation to supporting authority, do not merit consideration); *First National Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 207 (2007) (same). An appellant's failure to provide an argument and citation to facts and authority, in violation of Rule 341, results in forfeiture of our consideration of that issue. *Holt v. City of Chicago,* 2022 IL App (1st) 220400, ¶¶ 2-3; *BAC*

*Home Loan Servicing, LP v. Mitchell,* 2014 IL 116311, ¶ 23 ("an appellant's failure to argue a point in the opening brief results in forfeiture under Supreme Court Rule 341(h)(7)"); *Sakellariadis v. Walters,* 391 Ill. App. 3d 795, 804 (2009) ("The failure to assert a well-reasoned argument supported by legal authority is a violation of *** Rule 341(h)(7) ***, resulting in waiver").

¶ 78    Tenant provides no cohesive argument as to why the court erred in granting summary judgment on its claims of breach of contract. It does not set out the elements to establish a breach of contract action, or explain why summary judgment was improperly granted specific to those counts. Although a reply brief would not be a proper place to introduce new argument (see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020)), we note that Tenant did not even acknowledge its previous failure or attempt to flesh out any argument in its reply brief. In these circumstances, this court finds that Tenant forfeited any claim of error based on the trial court's grant of summary judgment on Tenant's breach of contract claims. *Thrall Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("The appellate court is not a depository in which the appellant may dump the burden of argument and research").

¶ 79    Turning to the merits of Tenant's appeal, Tenant raises several arguments regarding how it contends that the court erred in granting summary judgment in Landlord's favor on its conversion claims. Specifically, Tenant asserts that Landlord's "self-help was illegal, actionable and a bar to any asserted defense," and that Landlord was required to use the Forcible Entry and Detainer Act to retake possession of the property,

¶ 80    We review a trial court's grant of summary judgment *de novo. Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14. For summary judgment, the movant must show (i) no triable issue of material fact exists and (ii) entitlement to judgment as a matter

of law. 735 ILCS 5/2-1005(c) (West 2020). Genuine issues of material fact involve disputed material facts or, if undisputed, facts from which reasonable persons might draw different inferences. *Id.*

¶ 81    Tenant's arguments regarding Landlord's "self-help" and the Forcible Entry and Detainer Act miss the mark. The trial court concluded that it need not decide whether the lease provision allowing self-help was enforceable and agreed with Tenant that Landlord had wrongfully retained possession of Tenant's property and failed to return the property on Tenant's demand. The trial court's ultimate decision to grant summary judgment in favor of Landlord and against Tenant was not based on a finding that Landlord's actions were justified, but instead, was based on Tenant's failure to provide any evidence of damages.

¶ 82    "Damages for an injury to the plaintiff are an essential element of any tort cause of action." *Brummel v. Grossman*, 2018 IL App (1st) 170516, ¶ 83 (internal quotation marks and citation omitted). Specifically, in a conversion action, the proper measure of damages is the market value of the property at the time of the conversion. *First National Bank of Mount Prospect v. York*, 27 Ill. App. 3d 614, 616 (1975). It is the plaintiff's burden to prove the fair market value of property. See *Benford v. Everett Commons, LLC,* 2014 IL App (1st) 130314, ¶ 35. A plaintiff is required to prove damages to a reasonable degree of certainty. *Beasley v. Pelmore*, 259 Ill. App. 3d 513, 523 (1994). Although a plaintiff need not prove the exact amount of the loss, it must present evidence providing a basis for assessing damages with a fair degree of probability. *Id.* "[L]ack of testimony concerning the condition and fair market value of the property" at the time of loss is fatal to any action to recover for its loss. *First National Bank of Elgin v. Dusold,* 180 Ill. App. 3d 714, 719 (1989).

¶ 83    Other than briefly mentioning that the court granted summary judgment finding that Tenant "failed to prove up damages," Tenant does not address the court's conclusion on this point, or provide any argument as to how Tenant had, in fact, provided any evidence of the fair market value of the property at issue.

¶ 84    As the trial court recognized, Tenant did not identify any evidence of the fair market value of any property, even in response to a direct discovery interrogatory. Moreover, Parmaksiz testified during his deposition that he did not have any knowledge of the value of the equipment. The only evidence Tenant claimed established the fair market value of the converted restaurant equipment was the total revenue earned by the Papa John's restaurant, and its allegation that the equipment allowed Tenant "to earn a substantial living and employ 25 people who had families." Such evidence is clearly speculative and so far removed from the fair market value of the equipment, that it is of virtually no probative value. See *Illinois State Toll Highway Authority v. West Suburban Bank,* 208 Ill. App. 3d 923, 929 (1991) (A trial court has the "discretion to reject evidence which is of little probative value because of its remoteness, uncertainty, or conjectural nature.").

¶ 85    Presumably recognizing its failure to prove damages under its conversion theory, Tenant alleges that conversion provides a "woefully inadequate remedy" and argues that the trial court's decision not to allow Tenant to amend its complaint to add counts other than breach of contract and conversion "forced [Tenant] into a cause of action that limited damages and then denied [Tenant] a remedy" when Tenant could not show evidence of the value of the property. Tenant argues that we should focus on the substance, not the title, of their claims. It alleges that the "cause of action which [Tenant] has continuously tried to prosecute, including seeking punitive

damages, was for illegal eviction." Tenant asserts that the facts alleged "undeniably fit squarely into illegal eviction, a cause of action the trial court refused to consider."

¶ 86    First, Tenant's argument is essentially a challenge to the trial court's decision not to allow an amendment. Section 2-616(a) of the Code provides that amendments to complaints may be allowed at any time before judgment, on just and reasonable terms. 735 ILCS 5/2-616(a) (West 2020). The decision whether to allow an amendment to a pleading rests within the sound discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Axion RMS, Ltd. v. Booth*, 2019 IL App (1st) 180724, ¶ 26. "A trial court abuses its discretion when no reasonable person would take the view adopted by the trial court." *Id.* To determine whether a trial court has abused its discretion, we look to the four *Loyola* factors set out by our supreme court: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 87    Although Tenant complains of the trial court's decision not to allow it to amend its complaint, it provides no argument that the trial court abused its discretion in doing so, and does not analyze its proposed amendment under the *Loyola* factors, or even mention that standard. In these circumstances, we find any argument that the trial court abused its discretion in disallowing Tenant's proposed amendment to be forfeited.

¶ 88    Forfeiture aside, this court would find no abuse of discretion under the circumstances of this case. The trial court meticulously went through each *Loyola* factor, explaining that the proposed amendment was not curing a defective pleading, that Landlord would be prejudiced by

29

allowing Tenant "to plead 32 new counts with four years of litigation completed and only a trial to be completed," that the new counts would require a continuance for new preparations for trial, and that Tenant had already amended its complaint three times. We do not find the trial court's findings on these factors to be so arbitrary or unreasonable that no reasonable person would take the view adopted by the trial court. See *Axion RMS, Ltd.,* 2019 IL App (1st) 180724, ¶ 26.

¶ 89 Additionally, even if Tenant had been allowed to bring an action for illegal eviction—the cause of action that he now claims that he "continuously tried to prosecute," and that the trial court wrongly refused to consider—his complaint would have fared no better. An action for improper eviction may be brought under the Forcible Entry and Detainer Act (FEDA). See 735 ILCS 5/9-101 *et seq.* (West 2010). However, FEDA provides a limited statutory remedy for re-possession, but *not* for tort damages. *Campana Redevelopment, LLC v. Ashland Group, LLC*, 2013 IL App (2d) 120988, ¶¶ 12-13; *Yale Tavern, Inc. v. Cosmopolitan National Bank*, 259 Ill. App. 3d 965, 971 (1994) ("Matters not germane to the issue of possession may not be litigated in a forcible entry and detainer action."); *Cherry v. Five Bros. Mortgage Co. Services & Securing, Inc.*, No. 18-C-03326, 2019 WL 4014066, at *4 (N.D. Ill. Aug. 25, 2019) (the Act "does not create a cause of action for tort damages at all—only restoration of possession"); *White v. City of Markham*, No. 99-C-3162, 1999 WL 1044835, at *4 n. 8 (N.D. Ill. Nov. 16, 1999) (the Act "merely allows for the restoration of possession, not tort damages"). Here, Tenant's complaint sought only damages, and not restoration of possession, and accordingly, an action for improper eviction would not provide Tenant the remedy it seeks.

¶ 90 Also underlying most of Tenant's challenges is Tenant's disagreement with the trial court's decision to disallow punitive damages. As an initial matter, punitive damages are not available to a plaintiff who cannot establish its underlying claim. See *Holzrichter v. Yorath*, 2013

IL App (1st) 110287, ¶ 146 (a "plaintiff cannot assert punitive damages without first properly pleading the underlying claims"); *Brummel*, 2018 IL App (1st) 170516, ¶ 83 (where a plaintiff could not show actual damages to prove the tort of retaliatory discharge, he was not entitled to punitive damages. "Illinois does not recognize a cause of action for punitive damages alone; punitive damages represent a type of relief rather than an independent cause of action.").

¶ 91    Moreover, even if Tenant could have prevailed on its conversion claim, the trial court correctly rejected any claim to punitive damages. "[P]unitive damages are not favored in the law, and courts must be cautious in seeing that they are not improperly or unwisely awarded." *In re Estate of Wernick,* 127 Ill. 2d 61, 83 (1989).

> "Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence. Since the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate-which is to say, conduct involving some element of outrage similar to that usually found in crime. The conduct must be outrageous, either because the defendant's acts are done with an evil motive or because they are done with reckless indifference to the rights of others."

*Loitz,* 138 Ill. 2d at 415–16 (internal quotations and citations omitted).

¶ 92    The initial decision whether punitive damages may be imposed in a particular case in this State is a matter normally reserved to the trial judge, and whether the circumstances in a particular case may justify an award of punitive damages is a question of law. *J.I. Case Co. v. McCartin–McAuliffe Plumbing & Heating, Inc.*, 118 Ill. 2d 447, 453 (1987).

¶ 93    We agree with the trial court that the circumstances in this case did not warrant an award of punitive damages. Even without deciding whether the relevant lease provision was enforceable, the fact remains that Landlord acted pursuant to the provisions of a lease between two commercial parties, and that Landlord notified Tenant of the intended action before enforcing the remedy provided for by the lease. In these circumstances, we agree with the trial court that there was no basis on which to find Landlord's actions so outrageous that they could support an award of punitive damages.

¶ 94    We next turn to Landlord's cross-appeal, in which it contends that the trial court erred in denying its request for attorney fees.

¶ 95    "Illinois follows the 'American rule,' which prohibits a prevailing party from recovering its attorney fees from the losing party absent an express statutory or contractual provision." *Oak Forest Properties, LLC v. RER Financial, Inc.*, 2018 IL App (1st) 161704, ¶ 12. "Accordingly, contracts that provide for an award of attorney fees to the prevailing party are in derogation of common law and must be strictly construed." *Id.*

¶ 96    Landlord's specific contention on appeal is that the trial court applied "the wrong contractual provision" in denying its request for attorney fees. Landlord alleges that the trial court's decision was based on its conclusion that there was no prevailing party under the lease provision which provided that where a party "assumed legal expenses due to any dispute over the provisions of th[e] lease, the prevailing party shall pay legal expenses and fees of the non-prevailing party" ("the 'prevailing party' provision"). Landlord claims, however, that the court should have applied a different provision of the lease, which provides:

> "Unless prohibited by applicable law, Tenant agrees to pay to Landlord the amount of all reasonable legal fees and expenses incurred by Landlord arising out

of or resulting from \*\*\* any act or omission by Tenant, including without limitation, any breach by Tenant of its obligations hereunder" ("the 'act or omission' provision").

¶ 97　The problem with Landlord's argument on appeal is that Landlord never made such a claim in the trial court. "[A]rguments may not be raised for the first time on appeal." *Webber v. Wight & Company*, 368 Ill. App. 3d 1007, 1019 (2006). "A reviewing court will not consider on review issues and arguments which were not presented to or considered by the trial court." *Jeanblanc v. Sweet*, 260 Ill. App. 3d 249, 254 (1994). Landlord's petition for attorney fees was exclusively based on the provision which Landlord now faults the trial court for applying. Landlord asserted that it was entitled to attorney fees under the "prevailing party" provision, and never raised an argument that attorney fees were also justified under the "act or omission" provision. Accordingly, even if we could find any error in the court's application of the "prevailing party" provision rather than the "act or omission" provision, such error was clearly invited by Landlord. *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 36 ("A party cannot invite an error by the trial court and then use it as a basis for appeal."). Because Landlord never raised the claim in the trial court, any argument that the court erred in failing to award attorney fees under the "act or omission" provision is forfeited on appeal. See *In re Estate of Chaney*, 2013 IL App (3d) 120565, ¶ 8 ("[I]ssues, theories, or arguments not raised in the trial court are forefeited and may not be raised for the first time on appeal."); *Lewis v. OSF Healthcare System*, 2022 IL App (4th) 220016, ¶ 60 ("It is well settled that issues not raised in the trial court are forfeited and cannot be raised for the first time on appeal."). Moreover, because Landlord makes no argument that the trial court incorrectly determined that it was not

the prevailing party, any argument that the trial court erred in its application of the "prevailing party" provision is also forfeited. Ill. S. Ct. R. 341(h)(7) ("Points not argued are forfeited").

¶ 98    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 99    Affirmed.